787 P.2d 1099

STATE of Arizona, ex rel. Lowell D. HAMILTON, Mesa City Prosecutor, Plaintiff–Appellee,

v.

Leonard Josef LOPRESTI, Defendant–Appellant.

No. 1 CA–CV 88–372.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 14, 1989.

Review Granted March 20, 1990.

Lowell D. Hamilton, City Prosecutor by Kevin Hays, Asst. City Prosecutor, Mesa, for plaintiff-appellee. .

Ronald I. Karp, Mesa, for defendant-appellant.

## OPINION

BROOKS, Judge.

This is an appeal from the superior court's ruling permitting the state to introduce horizontal gaze nystagmus (HGN) test results in the absence of a chemical analysis of the defendant's blood alcohol content to prove that the defendant violated A.R.S. section 28–692(A) by driving while under the influence of alcohol.[1] Defendant argues on appeal that HGN test results may not be admitted in the absence of a chemical analysis for the following reasons:

> 1) the evidence necessary to establish a foundation for admitting the results will cause unfair prejudice, confuse the issues, and mislead the jury;
>
> 2) the results will impermissibly quantify the defendant's blood alcohol content; and
>
> 3) the results will not meet the appropriate standard for scientific reliability.

We find that none of these reasons requires that HGN test results be excluded in the absence of a chemical analysis.

Defendant was arrested for driving while under the influence of alcohol in violation of section 28–692(A) and for several unrelated offenses. At the time of his arrest, he submitted to an HGN test but refused to submit to any other field sobriety test or to a blood alcohol test. The state filed a motion *in limine* in Mesa Municipal Court, asking that it be allowed to present evidence at trial that defendant's performance on the HGN test was consistent with that of a person who was under the influence of alcohol. The municipal court denied the state's motion on the ground that HGN test results were not admissible in the absence of a chemical analysis of defendant's blood alcohol content. The state then filed a petition for special action relief from the municipal court's ruling in Maricopa County Superior Court. The superior court granted the requested relief, ruling that

---

**1.** By observing a driver's ability to smoothly track the movement of an object held in front of his eye and slowly moved toward his ear and out of his line of vision, a trained officer can estimate whether the driver's blood alcohol content is less than or greater than .10%. *See State v. Superior Court, (Blake)*, 149 Ariz. 269, 271, 718 P.2d 171, 173 (1986).

the state was entitled to introduce HGN test results to prove that defendant was driving while under the influence of alcohol. The court noted, however, that *State v. Superior Court (Blake)*, 149 Ariz. 269, 718 P.2d 171 (1986), precluded the state from introducing any evidence that would "quantify" the defendant's blood alcohol content. Defendant appeals from this ruling.

■ Before HGN test results may be admitted into evidence, the state must lay a proper foundation for their admission by showing that the officer who tested the defendant was qualified to administer the test and that he conducted it properly. *Id.* at 279–80, 718 P.2d at 181–82. The officer in the present case maintained a log of HGN test results which reflected the percentage of times that his estimation as to whether a person's blood alcohol content was above or below .10% corresponded to the person's actual blood alcohol content as determined by a subsequent chemical analysis.

■ Defendant predicts that the officer would testify that he has accurately estimated whether a person's blood alcohol content was above or below .10% in a high percentage of cases. Defendant argues that this foundational testimony would cause the jury to assume, in the absence of a chemical analysis, that the officer also estimated that *his* blood alcohol content exceeded .10% and that this estimation was accurate. Citing Rule 403, Arizona Rules of Evidence, defendant contends that this will unfairly prejudice him, confuse the issues, and mislead the jury. However, defendant's concerns rest upon his assumption that the state would not be permitted to introduce evidence that his blood alcohol content exceeded .10% in the absence of a chemical analysis. As we will explain, this assumption is incorrect.

Defendant argues that there are only two possible reasons to admit HGN test results into evidence: 1) to corroborate or challenge the accuracy of a chemical analysis of the defendant's blood alcohol content and 2) to quantify the defendant's blood alcohol content. He concludes that the results would never be admissible in cases in which there was no chemical analysis in evidence, because the only possible reason to admit them in such cases would be to quantify the defendant's blood alcohol content—a use that our supreme court specifically prohibited in *Blake.*

In *Blake,* our supreme court held that HGN test results were admissible in section 28–692(A) prosecutions to prove that the defendant was driving while under the influence of alcohol. *Blake,* 149 Ariz. at 280, 718 P.2d at 182. The court also held, however, that the results were not admissible in any criminal prosecution as direct, independent evidence to *quantify* a defendant's blood alcohol content. *Id.*

In *State ex rel. McDougall v. Ricke,* 161 Ariz. 462, 778 P.2d 1358 (Ct.App.1989), we examined the scope of *Blake's* prohibition against using HGN test results for quantification purposes. We concluded that when the supreme court stated that the results were not admissible to "quantify" a defendant's blood alcohol content, it meant that they were not admissible to independently establish that the defendant's blood alcohol content equaled a *specific* percentage. *Ricke,* 161 Ariz. at 463, 778 P.2d at 1359. We held that *Blake* did not preclude testimony by the officer who administered the test that the defendant's blood alcohol content exceeded .10%. *Id.* We further held that with proper foundation, this evidence was admissible as independent proof that the defendant was driving while under the influence of alcohol in violation of section 28–692(A). *Id.* at 464, 778 P.2d at 1360. We therefore reject defendant's contention that the use of HGN test results for any purpose other than that of corroborating or challenging the accuracy of a chemical analysis constitutes an impermissible quantification of the defendant's blood alcohol content.

Defendant attempts to distinguish *Blake* from the present case on the ground that there was a chemical analysis in evidence in *Blake.* He contends that *Blake's* holding that HGN test results are admissible in section 28–692(A) cases is limited to those

cases in which there is a chemical analysis in evidence. We disagree.

In *Blake,* the court examined the general admissibility of HGN test results. It did not limit its holding concerning their admissibility in section 28–692(A) cases in the manner that defendant suggests. *See Blake,* 149 Ariz. at 280, 718 P.2d at 182. The court simply held that a chemical analysis was necessary to convict a defendant of the separate crime of driving with a blood alcohol content of .10% or more in violation of section 28–692(B). *Id.* at 279, 718 P.2d at 181. It also held that a chemical analysis was necessary to raise the presumption created by section 28–692(E)(3) that a person whose blood alcohol content was .10% or more was under the influence of alcohol. *Id.* at 279–80, 718 P.2d at 181–82. In contrast to these two statutes, section 28–692(A) does not require the state to show that the defendant's blood alcohol content equaled a specific percentage to establish that the defendant was driving while under the influence of alcohol. *See Anderjeski v. City Court,* 135 Ariz. 549, 550–51, 663 P.2d 233, 234–35 (1983).

Defendant next argues that the admission of the results in the absence of a chemical analysis would unfairly prejudice him because the results are based upon the officer's reading of reactions that cannot be duplicated. He maintains that it is impossible to determine whether the accepted technique was properly used because the officer does not record any of the critical measurements, such as the angle of HGN onset. He also notes that no independent evidence is available to enable him to verify or challenge the test's results.

In *Blake,* the court recognized that officers administering the HGN test did not always record the angle of HGN onset. *Blake,* 149 Ariz. at 272 n. 1, 718 P.2d at 174 n. 1. It stated that they sometimes looked for characteristics of high blood alcohol content that the test revealed instead. *Id.* Since the court nevertheless found that the results were admissible for some purposes, it apparently did not consider a record of the angle of HGN onset a necessary foundation for admitting the results for those purposes.

The court also recognized the fact that there was no way for an independent third party to duplicate or verify the officer's reading of the test. It cited this aspect of the test as one reason for limiting the admissibility of the results. *Id.* at 279, 718 P.2d at 181. However, as we have explained, it did not find that any of the reasons that it cited required that the results be excluded in section 28–692(A) cases in the absence of a chemical analysis. In section 28–692(A) cases, as the state points out, the defendant is free to challenge the test results as he would challenge any evidence concerning his appearance or behavior. The jury will decide whether the defendant was under the influence of alcohol on the basis of all of the evidence presented.

Finally, defendant argues that *Blake* holds that the HGN test only produces scientifically reliable evidence for the purpose of corroborating or challenging the accuracy of a chemical analysis of the defendant's blood alcohol content. Again, we disagree.

In *Blake,* the court found that the HGN test produced scientifically reliable evidence as measured by the standard enunciated in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923). *Blake,* 149 Ariz. at 279, 718 P.2d at 181. It based this finding upon its determination that the relevant scientific community generally accepted the proposition that police officers could be trained to estimate whether a person's blood alcohol content was above or below .10% on the basis of the test. *Id.*

For the reasons that we have discussed, we affirm the superior court's order authorizing the state to introduce the HGN test results, assuming that a proper foundation is established.

JACOBSON, P.J., and GERBER, J., concur.