799 P.2d 855

**STATE of Arizona, ex rel. Lowell D. HAMILTON, Mesa City Prosecutor, Plaintiff/Appellee,**

v.

**The CITY COURT of the CITY OF MESA, and the Honorable Walter Switzer, III, City Magistrate and Leonard Joseph Lopresti, Defendant and Real Party in Interest, Defendant/Appellant.**

No. CV–90–0003–PR.

Supreme Court of Arizona,
En Banc.

Oct. 11, 1990.

Lowell D. Hamilton, Mesa City Prosecutor, Kevin R. Hays, Chief Asst. City Prosecutor, Mesa, for plaintiff/appellee.

Ronald I. Karp, Mesa, for defendant/appellant LoPresti.

Kerry G. Wangberg, Phoenix City Prosecutor, L. Michael Hamblin, Asst. City Prosecutor, Phoenix, for amicus curiae City of Phoenix.

OPINION

GORDON, Chief Justice.

Leonard Joseph LoPresti (defendant) petitioned for review of a court of appeals' opinion affirming the superior court's grant of special action relief to the State. The superior court's ruling permits the State to introduce horizontal gaze nystagmus (HGN) test results, in the absence of a chemical analysis of defendant's blood alcohol content (BAC), as proof defendant violated A.R.S. § 28–692(A), which provides:

> It is unlawful and punishable as provided in § 28–692.01 for any person who is under the influence of intoxicating liquor

to drive or be in actual physical control of any vehicle within this state.

Because this is an issue of statewide importance, we granted review to clarify *State v. Superior Court (Blake),* 149 Ariz. 269, 718 P.2d 171 (1986), as it applies to cases involving a charge under § 28–692(A) only, where no chemical analysis of defendant's blood, breath, or urine was conducted. *See* Rule 23(f), Ariz.R.Civ.App.P., 17B A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

A Mesa police officer arrested defendant on September 15, 1987 for violating A.R.S. § 28–692(A) and for other unrelated traffic citations. Defendant refused to submit to a blood test offered by the officer for determination of BAC and refused to perform most field sobriety tests. No other chemical test was offered, and no chemical analysis was made of defendant's blood, breath, or urine. Defendant, however, did submit to a HGN test administered by the police officer, and was arrested on the basis of that test.[1]

The State filed a motion *in limine* in Mesa City Court seeking to have the HGN test results admitted at defendant's jury trial. The court denied the motion and the State challenged the ruling in a special action filed in superior court. The court granted relief, ruling that the city judge abused his discretion in denying the motion *in limine.* The court concluded that, pursuant to *Blake,* the State was entitled to introduce the HGN evidence, "together with other evidence of the defendant's behavior to prove the defendant was 'under the influence' of alcohol.... However, pursuant to *Blake,* the state is precluded from admitting any evidence that would quantify the defendant's blood alcohol content (BAC)." Defendant appealed and the court of appeals affirmed. 163 Ariz. 303, 787 P.2d 1099 (App.1989).

The court of appeals first noted that *Blake* holds that HGN test results are admissible to prove a violation of A.R.S. § 28–692(A), but not as direct independent evidence to quantify BAC. The court, citing *State ex rel. McDougall v. Ricke,* 161 Ariz. 462, 778 P.2d 1358 (App.1989), interpreted *Blake* to hold that although HGN test results are not admissible to establish a specific percentage of BAC, neither *Blake* nor *Ricke* precluded testimony by the officer administering the test that defendant's BAC exceeded 0.10%. The court reasoned that *Ricke* held such testimony, with proper foundation, is not the "quantification" precluded by *Blake* and therefore is admissible as evidence a suspect was under the influence of alcohol. The court of appeals further held that HGN testing met the *Frye* standard of scientifically reliable evidence. *See Frye v. United States,* 293 F. 1013 (D.C.Cir.1923) (standard is whether the technique is generally accepted by the relevant scientific community).

We granted review of all three issues raised in defendant's petition for review:

1. In the absence of a chemical analysis of blood, breath or urine in a DUI case, may the State introduce evidence in the form of the results of a HGN test that the BAC of the defendant was above or below a .10%?

2. In the absence of a chemical analysis of blood, breath or urine in a DUI case, may the State lay foundation for the introduction of evidence in the form of the results of a HGN test, in the pres-

---

1. The HGN test is one of several field sobriety tests police officers use to detect whether a suspect is under the influence of alcohol. Nystagmus refers to an involuntary jerking of the eyeball, and may be aggravated by central nervous system depressants, such as alcohol or barbiturates. *Blake,* 149 Ariz. at 271, 718 P.2d at 173 (citing THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 1980 (14th ed. 1982)). Horizontal gaze nystagmus is the jerking of the eyes as they are turned to the side. In adminis-

tering the test, the officer observes whether each eye can track movement smoothly, at what angle onset of nystagmus occurs, and whether pronounced nystagmus occurs at maximum deviation. *Id.; State v. Bresson,* 51 Ohio St.3d 123, 554 N.E.2d 1330, 1332–33 (1990); *see* 1 ERWIN, DEFENSE OF DRUNK DRIVING CASES § 8.26 (3d ed. 1989); Annotation, *Horizontal Gaze Nystagmus Test: Use in Impaired Driving Prosecution,* 60 A.L.R. 4th 1129, 1131–32 (1988).

ence of the jury, that the officer conducting the test maintained a minimum 80% accuracy factor in predicting whether or not the BAC of a defendant was above or below a .10%?

3. In the absence of a chemical analysis of blood, breath or urine in a DUI case, does admission into evidence of the result of the HGN test that the BAC of a defendant was above or below a .10% satisfy the *Frye* test for reliability?

## DISCUSSION

Defendant argues that the court of appeals' opinion unduly expands the holding in *Blake* by allowing quantification of BAC solely on HGN test results. Defendant contends *Blake* should instead be read to hold that, in the absence of a chemical test of blood, breath, or urine in a DUI case, the State may not introduce HGN test result evidence to show that a suspect's BAC was above .10%.

Both the State and amicus counter that the court of appeals correctly interpreted *Blake*. They claim *Blake* held only that HGN test evidence cannot by itself be used to fix a definite or specific BAC for purposes of convicting a person of violating § 28–692(B) or invoking the presumption of intoxication under § 28–692(E). In a case in which the only charge is a violation of § 28–692(A), HGN test results are admissible both to corroborate a chemical test and as evidence a suspect was under the influence. Both the State and amicus assert that *Blake* intended to allow testimony that HGN test results indicated a BAC greater than .10%, as the court of appeals held.

Because all parties rely on, and quote extensively from, our opinion in *Blake*, we review that opinion and its holdings. After reviewing testimony given at an evidentiary hearing, as well as pertinent literature on the subject, we held in *Blake* that the HGN test, when administered by a properly trained officer, may be used for limited purposes under A.R.S. § 28–692. We first noted that, like other roadside field sobriety tests, the HGN test is a search within the meaning of the fourth amendment. However, because the test does not involve

unreasonable intrusions, it may be justified by an officer's reasonable suspicion, based on specific articulable facts, that a driver is intoxicated. We held that the HGN test, like other field sobriety tests administered by properly trained and certified police officers, is admissible to establish probable cause to arrest and need not be tested under the *Frye* test when it is used for that purpose. 149 Ariz. at 273–76, 718 P.2d at 175–78.

Regarding the admissibility of HGN test results to show that a driver is "under the influence," we held that the test satisfies the *Frye* standard for admissibility. However, we also limited the use of HGN test results. We concluded that, with proper foundation as to the testing techniques and the officer's qualifications to administer the test, testimony regarding defendant's nystagmus is admissible

> to corroborate or attack, *but not to quantify*, the chemical analysis of the accused's blood alcohol content. It may not be used to establish the accused's level of blood alcohol in the absence of a chemical analysis showing the proscribed level in the accused's blood, breath or urine. *In subsection (A) prosecutions it is admissible, as is other evidence of defendant's behavior, to prove that he was "under the influence."*

*Id.* at 280, 718 P.2d at 182 (emphasis added). It is the emphasized portions of the above quote that appear to cause the most controversy in the courts below.

Although we held in *Blake* that HGN test results are admissible to confirm or challenge the accuracy of a chemical analysis of BAC and as evidence that a driver was under the influence, we emphasized that "it is *not admissible* in any criminal case as direct independent evidence *to quantify* blood alcohol content." *Id.* at 280, 718 P.2d at 182 (emphasis in original); *see also Howard v. State*, 744 S.W.2d 640, 641 (Tex.App.1987) ("HGN results are admissible for qualitative—but not quantitative—purposes.").

■ We clarify and reemphasize here that HGN test results, although satisfying

*Frye* for limited purposes, are inadmissible to estimate BAC in any manner, including estimates of BAC over .10%, in the absence of a chemical analysis of blood, breath, or urine.[2] In the absence of a chemical analysis, the use of HGN test results, as with observations from other field sobriety tests, is to be limited to showing a symptom or clue of impairment. Therefore, in such cases, the proper foundation for HGN evidence, although it can be presented before the jury, is limited to describing the officer's education and experience in administering the test and showing that proper procedures were followed. The officer may not testify regarding accuracy in estimating BAC from the test, nor may the officer estimate whether BAC was above or below .10%. The officer's testimony is limited to describing the results of the test and explaining that, based on the officer's experience, the results indicated a neurological impairment, one cause of which could be alcohol intoxication.

The Arizona DUI statutes, rules of evidence, and due process concerns support this holding. We note that our state legislature has specified that blood, breath, and urine tests are the only methods for measuring, or quantifying, BAC. A.R.S. § 28–692(G), (H); *Blake*, 149 Ariz. at 279, 718 P.2d at 181; *see also People v. Dakuras*, 172 Ill.App.3d 865, 122 Ill.Dec. 791, 794, 527 N.E.2d 163, 166 (1988) (because the HGN test does not determine BAC by analysis of specified bodily substances, the results are not admissible to prove BAC in any prosecution under DUI statute); *State v. Barker*, 366 S.E.2d 642, 646 (W.Va.1988) (assuming HGN test was found reliable, evidence would be admissible only as evidence of driving under the influence, but not to estimate BAC, as state legislature has not recognized HGN test as an appropriate method for measuring BAC). Therefore, "BAC, under § 12–692 is to be determined deductively from analysis of bodily fluids, not inductively from observation of involuntary bodily movements." *Blake*, 149 Ariz. at 279, 718 P.2d at 181. Within the limits of due process, it is the legislature's role to determine which tests may be used to measure BAC. Where the legislature has prescribed only specific tests for such measurements, it is not our province to add others.

Moreover, the HGN test does not conform to the requirements for determining BAC stated in the Arizona implied consent law, which does not include implied consent to take a HGN test for BAC. A refusal to take one of the prescribed tests leads to automatic suspension of the license or permit for a period of twelve months, § 28–691, and can be brought out in any civil or criminal action arising from the incident, § 28–692(K). In recognition of the constitutional limitations of implied consent laws, tests pursuant to the law are strictly governed by statutes for both testing requirements and Department of Health Services (DHS) qualifications. An important part of the testing requirements is the defendant's right to independently check the test results. *See McNutt v. Superior Court*, 133 Ariz. 7, 648 P.2d 122 (1982); *Baca v. Smith*, 124 Ariz. 353, 604 P.2d 617 (1979). The HGN test, although it carries a scientific patina, is clearly unchallengeable by independent means, other than by cross-examining the officer who administered the test. We do not believe cross-examination of the officer is a sufficient check when compared to the standards set forth for tests specifically accepted under DUI statute provisions for implied consent and for establishing BAC.

■ The State argues that the HGN test is no different than other field sobriety tests and that the refusal to submit to those tests can also be used against a de-

---

2. We note that the court of appeals' opinion in *Ricke*, 161 Ariz. 462, 778 P.2d 1358, contains statements that could be interpreted to conflict with our holding in this case. However, we also note that the case differs on its facts. In *Ricke*, the defendant was given a breath test, unlike defendant in this case. Where a chemical analysis has been conducted, the parties may introduce HGN test results in the form of estimates of BAC over .10%, to challenge or corroborate that chemical analysis. When no chemical analysis has been conducted, the use of HGN test results is limited as set forth in this opinion.

fendant.[3] However, we believe the HGN test differs significantly from other field sobriety tests in many respects. Unlike the typical field sobriety tests, the HGN test is accompanied by evidence concerning the officer's training and experience in administering the test. Moreover, other field sobriety tests purport to be based only on common human understanding and do not have the scientific aura that the State would give to the HGN test.[4]

One danger inherent in the use of scientific evidence is that the jury may accord it undue significance because it associates "science" with truth. *Blake,* 149 Ariz. at 276, 718 P.2d at 178 (citing M. UDALL & J. LIVERMORE, LAW OF EVIDENCE § 102 (2d ed. 1982)). Thus, our rules of evidence advise that although relevant evidence generally is admissible, it "may be excluded if its utility on a legitimate basis is slight compared to the danger it poses of either illegitimate use or waste of judicial time." M. UDALL & J. LIVERMORE, *supra,* § 82, at 166. Although testimony that defendant's BAC was over .10%, based on an HGN test, may be relevant to a DUI charge under § 28–692(A), we believe its potential to confuse and unduly influence the jury leads to its exclusion where no chemical test of BAC is present.

Finally, we are concerned with the accuracy of the HGN test in establishing BAC levels. We note, for example, that an Intoxilyzer with an 80% accuracy level would not qualify for certification under DHS regulations. *See* Ariz.Comp.Admin.R. & Regs., DHS Regs., Art. 4: Determination of Blood Alcohol Content, R9–14–401 to R9–14–412 (supplemented and renumbered March 31, 1987); *see also State v. Velasco,*

165 Ariz. 480, 799 P.2d 821 (1990) (to be certified, all primary breath testing devices must meet a plus or minus 5% error factor). As we noted in *Blake,* allowing the use of HGN test results to establish BAC over .10% where there is no chemical analysis would raise several potential due process problems.

> The arresting officer's "reading" of the HGN test cannot be verified or duplicated by an independent party. *See Scales v. City Court of Mesa,* 122 Ariz. 231, 594 P.2d 97 (1979). The test's recognized margin of error provides problems as to criminal convictions which require proof of guilt beyond a reasonable doubt. The circumstances under which the test is administered at roadside may affect the reliability of the test results. Nystagmus may be caused by conditions other than alcohol intoxication. And finally, the far more accurate chemical testing devices are readily available.

*Blake,* 149 Ariz. at 279, 718 P.2d at 181; *see generally* 1 ERWIN, *supra,* § 8A.08 (listing problems with the HGN test).

## CONCLUSION

The HGN test satisfies *Frye* for the limited purposes set out in *Blake* and in this opinion. In a case involving only a § 28–692(A) charge, where no chemical test of blood, breath, or urine has occurred, the use of HGN evidence is restricted. Evidence derived from the HGN test, in the absence of a chemical analysis, although relevant to show whether a person is under the influence of alcohol, is only relevant in the same manner as are other field sobriety tests and opinions on intoxication. In such

---

**3.** We note that the State argues that although the HGN test satisfies the *Frye* standard for scientific evidence and can be used to establish BAC, it also argues that the test is no different than the usual field sobriety tests for most uses. Because field sobriety tests cannot be used to establish BAC, they need not satisfy the *Frye* standard. Field sobriety tests are limited to showing clues or symptoms that correlate to impairment. It is well-accepted that even a lay witness may give an opinion as to a person's intoxication. *Esquivel v. Nancarrow,* 104 Ariz. 209, 213, 450 P.2d 399, 403 (1969); *see* Rule 701, Ariz.R.Evid., 17A A.R.S.

**4.** The State admits it would have the prosecution lay the foundation for an officer to testify he or she can accurately estimate a person's BAC to be over .10%. The State would then put on another expert to testify that anyone with a BAC at that level is in fact impaired. We believe this would improperly confuse subsection A and B cases, because it would blend those cases depending solely on a driver's impairment (subsection A) with those cases depending solely on chemical analysis (subsection B). Allowing the State to introduce the proposed testimony would circumvent the intent of the DUI statutes to separate the two charges.

a case, HGN test results may be admitted only for the purpose of permitting the officer to testify that, based on his training and experience, the results indicated possible neurological dysfunction, one cause of which could be alcohol ingestion. The proper foundation for such testimony, which the State may lay in the presence of the jury, includes a description of the officer's training, education, and experience in administering the test and a showing that the test was administered properly. The foundation may not include any discussion regarding the accuracy with which HGN test results correlate to, or predict, a BAC of greater or less than .10%.

The decision of the court of appeals is vacated and the superior court is reversed. The case is remanded for further proceedings consistent with this opinion.

FELDMAN, V.C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.