834 P.2d 1267

**The STATE of Arizona, Appellee,**

v.

**David Lincoln COOK, Appellant.**

**No. 2 CA-CR 91-0434.**

Court of Appeals of Arizona, Division 2, Department A.

June 30, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie and Bruce M. Ferg, Tucson, for appellee.

Susan A. Kettlewell, Pima County Public Defender by Susan M. Quillin, Tucson, for appellant.

## OPINION

HOWARD, Judge.

Following a jury trial, appellant was convicted of driving under the influence of intoxicating liquor (DUI) while his license was suspended, cancelled, revoked, or refused, a class 5 felony. He was sentenced to the presumptive term of two years in prison. On appeal, he argues that the trial court erred in 1) permitting the prosecutor to elicit testimony correlating the results of a horizontal gaze nystagmus (HGN) test with blood alcohol content (BAC) and 2) failing to grant a continuance to permit the defense to secure the attendance of a key witness. Finding no error, we affirm.

Appellant was stopped by police officers after they observed him driving in a manner that led them to suspect that he was under the influence of intoxicants. Appellant had difficulty locating and extracting his identification from his wallet and repeatedly asked the officer what he had said he wanted. He also admitted having consumed alcohol. The two officers testified that, when he emerged from his vehicle, he was staggering, his face was flushed, his eyes were bloodshot, and his breath smelled of alcohol. He refused requests to submit to field sobriety tests and then began to walk away from the officers. As they grabbed his arms, he collapsed to his knees. He was then placed under arrest and asked to take an intoxilyzer test, which he refused. Officer Kmak, a member of the DUI squad, was then summoned.

Appellant refused Officer Kmak's request that he take an intoxilyzer test but agreed to submit to the HGN test. *See generally State v. Superior Court (Blake)*, 149 Ariz. 269, 718 P.2d 171 (1986). Kmak testified that one cause of appellant's failure on all six clues of the test "could" be a central nervous system depressant, such as alcohol. On cross-examination, he stated that Department of Public Safety standards required only that he

have an 80 percent accuracy rate in administering the HGN test in order to retain his certification, which meant that "under the DPS standards that are acceptable, if you assume that all these jurors were tested, one was tested incorrectly." To rebut this challenge to the test's reliability, the prosecutor elicited testimony on redirect that Kmak's own accuracy rate was in excess of 97 percent. On recross, the following transpired:

Q  Officer Kmak, who made determination [sic] that you were 97 percent accurate in HGN?

A  I believe that was Sgt. John Patla from the Traffic Division DUI Squad.

Q  That's based on a review of your HGN logs?

A  Yes, sir.

Q  Who fills out the logs?

A  I do.

Q  Does anyone come out and observe you on all your HGN tests to make sure you're doing it properly?

A  As a matter of fact, yes.

Q  On every single test?

A  No. But Sgt. Patla is an instructor in it and he's watched me perform it numerous times in the field and in training.

Q  Was there any one out there—was Sgt. Patla out there on the date of this arrest?

A  No.

Q  Who keeps the logs?

A  There was—there is several copies of it. The original copy the original officer trained technician maintains and keeps it. And a copy of it goes to the traffic division where they maintain your accuracy and proficiency on it. And a copy of it goes to the police department academy where the kind a standard on it [sic] and an accuracy level on it and have copies available for prosecutors and different courts.

Over appellant's objection, the prosecutor then proceeded to establish that Kmak's personal proficiency rate was determined by comparing the HGN test results with the results of subsequent chemical tests of blood, breath, or urine and that Kmak's test results were accurate if he "came up with six cues and then that person took an intoxylizer [sic], they were over .10...."

Appellant contends that admission of this testimony violates the supreme court's holding in *State ex rel. Hamilton v. City Court (Lopresti)*, 165 Ariz. 514, 799 P.2d 855 (1990), that he did not open the door to its admission, and that if he did open the door, the resulting prejudice far outweighed its probative value. In *Lopresti*, the supreme court held as follows:

In a case involving only a § 28–692(A) charge, where no chemical test of blood, breath, or urine has occurred, the use of HGN evidence is restricted. Evidence derived from the HGN test, in the absence of a chemical analysis, although relevant to show whether a person is under the influence of alcohol, is only relevant in the same manner as are other field sobriety tests and opinions on intoxication. In such a case, HGN test results may be admitted only for the purpose of permitting the officer to testify that, based on his training and experience, the results indicated possible neurological dysfunction, one cause of which could be alcohol ingestion. The proper foundation for such testimony, which the State may lay in the presence of the jury, includes a description of the officer's training, education, and experience in administering the test and a showing that the test was administered properly. The foundation may not include any discussion regarding the accuracy with which HGN test results correlate to, or predict, a BAC of greater or less than .10%.

165 Ariz. at 518–19, 799 P.2d at 859–60.

The testimony described and quoted above was entirely consistent with *Lopresti* until the officer testified about the correlation between his test results and the results of chemical tests. However, it is abundantly clear that this testimony was elicited solely for the purpose of rebutting the impression created on cross-examination that Kmak's claim of 97 percent accuracy was dubious because it was apparently based only on unsupervised self-reporting. At that point, appellant opened the

door to permit the state to establish the basis for determining the accuracy of HGN test results and to rebut the misimpression created by appellant. Even though this testimony was inadmissible under *Lopresti*, as a result of appellant's cross-examination, it became highly relevant and admissible. *See generally* M. Udall, J. Livermore, P. Escher, and G. McIlvain, *Arizona Practice, Law of Evidence* § 11 (3d. ed. 1991); *see also State v. Williams*, 133 Ariz. 220, 650 P.2d 1202 (1982).

Nor do we find that any prejudice outweighed its probative value. There was only one, brief mention of correlation with chemical test results, and Officer Kmak made no attempt to estimate appellant's blood alcohol level. Nor was the jury instructed as to the legal significance of a .10 BAC. Considering the record as a whole, we find no error.

■ Appellant also argues that the trial court erred in refusing his request for a continuance when one of his witnesses failed to honor a subpoena to appear at trial. The record shows that the witness did appear on the first day of trial and was sworn in but failed to show on the second day. The trial court waited until 11:30 to begin proceedings and then permitted her testimony from appellant's first trial to be read to the jury. No explanation appears for the witness's absence either in the motion for new trial or on appeal.

The decision on a motion for continuance is committed to the discretion of the trial court, and we will not disturb that decision on appeal absent a showing of a clear abuse and resulting prejudice. *State v. Amarillas*, 141 Ariz. 620, 688 P.2d 628 (1984). Neither showing has been made here. In particular, we find that no prejudice resulted to appellant. No showing has been made that the witness could have been located and produced within a reasonable time had a continuance been granted. The witness's prior testimony on the same subject was read to the jury. From that testimony it is clear that she was sufficiently distant from appellant and the officers to cast serious doubt on the accuracy of her recounting of the events. On this record, we cannot find that her live testimony would in any way have affected the verdict in this case.

We have reviewed the entire record for fundamental error and have found none. Therefore, we affirm.

LIVERMORE, C.J., and LACAGNINA, P.J., concur.