**Commonwealth** of the
Northern Mariana Islands,
Plaintiff/Appellee,

**v.**

Serafin P. **Palacios**,
Defendant/Appellant.
Appeal No. 95-010
Traffic Case No. 94-0096
February 29, 1996

---

Submitted on Briefs February 13, 1996

Counsel for appellant: Christine B. Matson, Assistant Public Defender, Saipan.

Counsel for appellee: Virginia S. Sablan, Assistant Attorney General, Saipan.

BEFORE: TAYLOR, Chief Justice, and VILLA-GOMEZ and ATALIG, Justices.

TAYLOR, Chief Justice:

■ The appellant, Serafin P. Palacios, appeals from his conviction of the offense of driving under the influence of alcohol. He argues that the Superior Court erred in admitting evidence that he had failed certain field sobriety tests on the evening of his arrest. We have jurisdiction under 1 CMC § 3102(a). We affirm.

## FACTS

Mr. Palacios was arrested and cited for driving under the influence of alcohol at approximately 6:10 p.m. on April 19, 1994, on Tinian. Officer Gilbert Taisacan observed a red sedan "fully parked in the middle of the road." Excerpts of Record at 2. The officer approached the car and observed Mr. Palacios behind the steering wheel. *Id.* at 6. The officer testified that Mr. Palacios "got all bloodshot eyes, also a . . . strong [odor] of alcohol coming out of his exhaled breath." *Id.* at 7. The officer then "asked him has he been drinking any alcohol and he stated, yes, it was only two." *Id.* Mr. Palacios was asked to get out of his vehicle; the officer testified that "I knew he was drunk because while he was walking towards the road, he was slow." *Id.* at 13.

Officer Taisacan then testified about the field sobriety tests he administered to Mr. Palacios. Asked about his training to perform these tests, the officer testified that he was instructed in field sobriety testing "[d]uring the academy when I was in training for traffic and DUI." *Id.* Officer Taisacan had been a police officer for three years. *Id.* at 1. When asked how many times he had administered field sobriety tests, he responded "[q]uite a few." *Id.* at 13. He estimated that of those persons to whom he had given field sobriety tests "[o]ver ten" percent had passed. *Id.* at 14.

According to the officer, he first asked Mr. Palacios to perform a coordination test. This required him to "stand up, tilt his head back, extend his arms with his index fingers pointing out to touch the tip of his nose with the tip of his fingers five times each side." *Id.* Mr. Palacios "failed the test" in the following ways:

After I explained . . . the test to him, I asked him if he understood . . . what he [is] supposed to do and he said yes, and I asked him if he is ready to do it, and he said yes; but then he did it and when he did the test, . . . his arms were on his sides and when . . . I told him to touch the tip of his nose, he didn't touch it. The tip of

his nose, he touched over here [gesturing towards the bridge of his nose].

*Id.* at 15. According to the officer, Mr. Palacios also failed to tilt his head back, failed to keep his eyes closed *id.* at 16, and kept his left hand in his pants pocket while performing the test with his right. *Id.* at 20. At the conclusion of this test, Officer Taisacan requested that Mr. Palacios perform a balance test, but he refused. *Id.*

Officer Taisacan then arrested Mr. Palacios and transported him to the police station. *Id.* at 22. At the station, Mr. Palacios again performed a coordination test, which he again failed. *Id.* at 23-25. He also failed a balance test, consisting of walking with heel-to-toe contact down a line marked on the station floor, turning around and walking back. *Id.* at 20, 26. Specifically, "[h]e didn't walk on the line . . . there were some . . . counts . . . that . . . he meets the line or he walks over the line." *Id.* at 26. The officer testified that when attempting to turn around, Mr. Palacios "lost his balance, he almost fell." *Id.* After administering these two tests, Officer Taisacan arranged for a "Breathalyser" test to be performed. Mr. Palacios refused the Breathalyser. *Id.* at 29.

In addition to observing the sobriety tests, Officer Taisacan observed Mr. Palacios's general demeanor during the period of his arrest, testifying that

> When we first came he kept saying that he is not drunk, when he is standing, he cannot stand straight . . . he kept moving, he cannot keep still. I told him to keep still and he wouldn't. . . . [It] was good that Officer Manglona was there to assist him to the chair because otherwise he would have fallen to the floor.

*Id.* at 29-30. Officer Taisacan also testified that Mr. Palacios's speech was "slurred" and that he "wasn't polite." *Id.* at 30. The officer concluded his testimony with the opinion that on the evening of his arrest and citation, Mr. Palacios "was drunk, he's obviously drunk, I knew he was drunk." *Id.* at 33.

During the direct examination, counsel for Mr. Palacios objected several times that the officer's testimony regarding the field sobriety tests was irrelevant to the charge of drunk driving and that the government had not laid sufficient foundation for the testimony. *Id.* at 14, 24. The court overruled these objections. *Id.* On cross-examination, Officer Palacios acknowledged that an athlete would have an easier time passing the field sobriety test, and that Mr. Palacios did not appear to be an "athlete." *Id.* at 35. When asked "[i]s there a relationship between how many beers a person has and where they touch their nose in the Field Sobriety Test?," Officer Taisacan responded "[t]here's no relation." *Id.* at 40.

Upon the conclusion of the testimony, the Superior Court rendered its findings as follows:

> While Officer Taisacan was talking to Mr. Palacios, Officer Taisacan observed Mr. Palacios to have been drinking [and he smelled] alcohol. . . . Mr. Palacios'[s] eyes were red. [The] way he walked when he was getting out of his vehicle. Like he wasn't sure of his steps. When Mr. Palacios . . . was informed of the test, the Officer at that time determined that Mr. Palacios could not . . . pass the test . . . . Mr. Palacios understood the instruction on how to do the test but he could not do it. In the opinion of this court and its finding, Mr. Palacios is drunk that night or had something to drink. The police officer took Mr. Palacios over at the police station to do another test. When they arrived at the police station, Mr. Palacios was still unsure of his steps. He almost fell once when he made a turn. . . . [A]ccording to Officer Taisacan, Mr. Palacios is very drunk. The court believes the testimony of the Officer. When the Officer testified and . . . was asked of his opinion of the condition of Mr. Palacios, he repeated three times that Mr. Palacios looks like he had too much to drink. . . . [B]ased on a person's experience, especially officials who are . . . trained in this area, as long as . . . he observed . . . Mr. Palacios, and this court is also without a doubt that Mr. Palacios had something to drink. And the alcohol that he had, the court is without a doubt that it impaired his driving and impaired his thinking and his body. Based upon those reasons, the court find[s] the defendant guilty.

*Id.* at 57-58. Accordingly, the court issued a judgment of conviction on February 15, 1995, finding Mr. Palacios guilty, among other things, of driving under the influence of alcohol, in violation of 9 CMC § 7105. He was sentenced on March 17, 1995. He timely appealed.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

Consideration of the following issues is necessary for the resolution of this appeal:

332

1. Whether the testimony regarding field sobriety tests constituted "scientific evidence," requiring that the witness offering the testimony be qualified as an expert under Com. R. Evid. 702;

2. Whether the Superior Court erred in its findings regarding the results of the field sobriety tests.

 This Court reviews Superior Court rulings on the admission of evidence for an abuse of discretion. An error in such decision is to be disregarded if it does not affect substantial rights of the defendant. *Commonwealth v. Bergonia*, 3 N.M.I. 22, 28 (1992); *United States v. Rahm*, 993 F.2d 1405, 1409-10 (9th Cir. 1993) (exclusion of expert's testimony reviewed for abuse of discretion). The Court reviews the factual findings of the Superior Court in a criminal case for sufficiency of the evidence. *See Bergonia*, 3 N.M.I. at 34.

## ANALYSIS

### 1. Admission of Field Sobriety Tests

This Court has held that a defendant's failure to pass field sobriety tests, combined with other facts such as an officer's observation of a flushed complexion, bloodshot eyes and slurred speech, can be a sufficient factual basis to support a conviction of driving under the influence of alcohol. *See Commonwealth v. Peters*, 1 N.M.I. 466, 476-77 (1991). However, this Court has never determined whether field sobriety testing should be considered "scientific, technical or other specialized knowledge," admissible as a basis of expert opinion under the standards of Com. R. Evid. 702. Nor has the issue been examined by predecessor courts of the Commonwealth. It is therefore necessary to examine the common law of the fifty states, pursuant to 7 CMC § 3401.

Traditionally, the offense of driving under the influence of alcohol has been proven based on the observation of percipient witnesses. *People v. Hitch*, 527 P.2d 361, 370 (Cal. 1974) (en banc). A person's sobriety or intoxication is well-established as a subject on which lay witnesses may provide opinions. *Esquivel v. Nancarrow*, 450 P.2d 399, 403 (Ariz. 1969) (en banc); *People v. Sullivan*, 270 N.E.2d 571, 573 (Ill. App. Ct. 1971) (citing 42 A.L.R. 1498, 1506 (1926)).

More recent precedents, arising from the development of a new, specialized field sobriety test called "HGN"[1] make clear that the traditional field sobriety tests performed by police fall squarely within the province of lay, rather than expert, testimony. Tests such as "'walk the line,' 'one leg stand,' and 'finger to nose' are not so abstruse as to require a foundation other than the experience of the officer administering them." *People v. Vega*, 496 N.E.2d 501, 505 (Ill. App. Ct. 1986). In *State v. Merrit*, 647 A.2d 1025, 1028 (Conn. Ct. App. 1994), the court reviewed cases from many jurisdictions and concluded that "field sobriety tests that probe an individual's sense of balance, his coordination and his abilities to comprehend and follow instructions," are within the common knowledge of lay jurors and therefore not the subjects of expert testimony. *See also State v. City of Mesa*, 799 P.2d 855, 859 n.3 (Ariz. 1990); *State v. Murphy*, 451 N.W.2d 154, 157 (Iowa 1990); *State v. Nagel*, 506 N.E.2d 285, 285 (Ohio App. Ct. 1986).

█ Here, the field sobriety tests administered to Mr. Palacios were of the traditional variety, testing his balance, coordination and ability to follow instructions. Excerpts of Record at 14, 26. These are simple tests, designed to evaluate behavior well within the realm of ordinary human experience. The field sobriety tests performed here are therefore not "scientific, technical or specialized knowledge" within the meaning of Com. R. Evid. 702, and an officer testifying about them need not be qualified as an expert.

█ Rather, Com. R. Evid. 701(1) sets forth the proper evidentiary threshold for such testimony, specifying that it be "rationally based on the perception of the witness." *See Vega*, 496 N.E. 2d at 505. In this context, the government must show that an officer's experience and training enabled him to observe the fine points of a person's actions in performing a field sobriety test, and that this perception was rationally related to the conclusion that the person was intoxicated at the time of observation. This threshold was amply established in Mr. Palacios's case. Officer Taisacan testified that he had three years' experience as an officer, had received training at the Police Academy in administering field sobriety tests, and had performed "quite a few" such tests in the past. This training and experience were sufficient to qualify him to testify regarding Mr. Palacios's performance of the sobriety tests. Moreover, there is nothing in the record to suggest that the tests were improperly administered or that Officer Taisacan incorrectly interpreted the test results. The Superior Court did not err in admitting his testimony.

---

[1] This test evaluates whether a person's eye is able to follow smoothly an object such as an officer's flashlight or finger from a point at the center of vision out to the periphery. Horizontal gaze nystagmus (HGN) is an involuntary "bounce" of the eye. According to the theory underlying the test, "bounces" beginning at forty-five degrees off center are strongly correlated with impairment from alcohol consumption. *State v. Merrit*, 647 A.2d 1021, 1025 (Conn. App. Ct. 1994).

## 2. Superior Court's Findings

Mr. Palacios claims that even if the testimony about the field sobriety tests was properly admitted into evidence, the Superior Court's judgment of conviction was based on "an erroneous finding of fact as regards the field sobriety test." Reply Brief at 2. We disagree.

■ The field sobriety test evidence was not the only basis on which the court found Mr. Palacios to have been under the influence of alcohol. Thus, in order to warrant reversal the appellant's argument must rise to the level of an assertion that the evidence was insufficient to support the verdict. A challenge to the sufficiency of evidence in a criminal case requires the Court to consider the evidence in the light most favorable to the government and to determine whether any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bergonia*, 3 N.M.I. at 34.

Here, as discussed above, the record contains evidence that the sobriety tests were properly administered and that Officer Taisacan had sufficient training to administer the tests and interpret the results. The officer's testimony contains ample and specific support for the finding that Mr. Palacios failed the tests. In addition, there is ample evidence apart from the sobriety tests themselves which indicates that Mr. Palacios was intoxicated on the night in question. There was no error.

## CONCLUSION

For the foregoing reasons, the Superior Court's judgment of conviction is **AFFIRMED**.