IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 2 CA-SA 2006-0083 |
| HON. HECTOR CAMPOY, Judge of | ) | DEPARTMENT B |
| the Superior Court of the State of | ) | |
| Arizona, in and for the County of Pima, | ) | O P I N I O N |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RICHARD J. CORDOVA, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |

SPECIAL ACTION PROCEEDING

Pima County Cause No. CR-20052955

JURISDICTION ACCEPTED; RELIEF GRANTED

Barbara LaWall, Pima County Attorney
  By Melissa Rueschhoff                                                          Tucson
                                                      Attorneys for Petitioner

Law Offices of Jeffrey D. Bartolino
  By Jeffrey D. Bartolino                                                        Tucson
                                   Attorney for Real Party in Interest

E S P I N O S A, Judge.

**¶1**        The state brought this special action to challenge a ruling that excludes from Richard Cordova's trial for driving under the influence of an intoxicant (DUI) the use of certain words and terms to describe his performance on a series of roadside sobriety tests. For the reasons expressed below, we accept jurisdiction and grant relief.

### Facts and Background

**¶2**        According to the petition and response, in June 2005, Cordova was the driver of a vehicle involved in an automobile accident. He told the responding Pima County Sheriff's Department (PCSD) officer he had come from a party and the officer noticed a "slight odor" of alcohol coming from Cordova's direction. Another PCSD officer administered to Cordova a horizontal gaze nystagmus (HGN) test,[1] and he exhibited six cues of impairment. The officer then administered two other field sobriety tests (FST): the walk-and-turn test on which Cordova exhibited four cues of impairment, and the one-leg-stand test on which he exhibited two cues of impairment. Cordova was arrested and charged with DUI in violation of A.R.S. § 28-1381(A)(1).

**¶3**        In August 2006, the trial court conducted a pretrial hearing to address, *inter alia*, how evidence of Cordova's performance on the FSTs would be presented to the jury.

---

[1]"The HGN test is one of several field sobriety tests police officers use to detect whether a suspect is under the influence of alcohol. Nystagmus refers to an involuntary jerking of the eyeball, and may be aggravated by central nervous system depressants, such as alcohol or barbiturates." *State ex rel. Hamilton v. City of Mesa*, 165 Ariz. 514, 515 n.1, 799 P.2d 855, 856 n.1 (1990). In administering the test, "the officer observes whether each eye can track movement smoothly, at what angle onset of nystagmus occurs, and whether pronounced nystagmus occurs at maximum deviation." *Id*.

Cordova argued the FSTs would be given unwarranted scientific credibility if the state were permitted to use the words "sobriety," "test," "field sobriety test," "impairment," "pass," "fail," or "marginal" in describing his performance on the tests. Cordova's expert witness testified that scientific data does not support a correlation between an impaired ability to operate a vehicle and a person's performance on FSTs and that several factors other than alcohol influence could cause a cue of impairment on an FST, i.e., fatigue, concussion, use of prescription drugs, or injury to the inner ear. The state did not present expert testimony at the hearing. The respondent judge concluded "there is no [scientific] linkage between [FST performance] and impairment" and ordered "there shall be no reference to impairment, sobriety, tests, pas[s,] . . . fail, marginal," or "field sobriety test" when presenting testimony at trial about FSTs, but "the [testifying] officer may describe what was asked of the defendant and how the defendant responded." The state seeks review of the respondent's ruling precluding the use of the prohibited vocabulary at trial.

## Special Action Jurisdiction and Standard of Review

¶4 We accept jurisdiction of this special action because the order challenged is interlocutory in nature and the state has no equally plain, speedy, or adequate remedy by appeal. *See* Ariz. R. P. Spec. Actions 1(a), 17B A.R.S. Special action review is also proper because the issues raised are questions of first impression, they could affect many DUI prosecutions, and are of statewide importance. *See ChartOne, Inc. v. Bernini*, 207 Ariz. 162, ¶¶ 8-9, 83 P.3d 1103, 1106-07 (App. 2004).

3

**¶5** Trial courts have broad discretion in ruling on the admission of evidence. *See State v. Esser*, 205 Ariz. 320, ¶ 3, 70 P.3d 449, 451 (App. 2003). Accordingly, we review the respondent judge's ruling under an abuse of discretion standard. *See* Ariz. R. P. Spec. Actions 3(c), 17B A.R.S.

**Discussion**

**¶6** We begin by recognizing it is the trial courts' traditional prerogative and duty to monitor the admission of evidence in criminal trials and to ensure the probative value of admitted evidence is not substantially outweighed by unfair prejudice to the defendant. *See State v. Salazar*, 173 Ariz. 399, 405, 844 P.2d 566, 572 (1992); Ariz. R. Evid. 403, 17A A.R.S. Accordingly, courts must ensure evidence is not presented in such a manner that it is given unwarranted scientific credibility. With this in mind, we address the use of FST evidence at trial and the respondent judge's order.

**¶7** Our review of Arizona law on the admissibility of evidence about FSTs and DUI suspects' performance on them does not support the respondent judge's order restricting the vocabulary available to describe Cordova's performance on the FSTs. Although Arizona courts have not addressed the specific issue raised in this special action, our courts have ruled several times on the admissibility of FST evidence. These rulings have established a framework for the use of FST evidence at trial and have delineated which aspects of such evidence are inadmissible.

4

¶8　　　Generally, the results of FSTs are admissible as relevant evidence of a defendant's impairment. *See State ex rel. Hamilton v. City of Mesa*, 165 Ariz. 514, 518 n.3, 799 P.2d 855, 859 n.3 (1990) (FST evidence admissible to "show[] clues or symptoms that correlate to impairment"). Police officers may testify about the "manner in which [a defendant] performed the [FSTs]," *Fuenning v. Superior Court*, 139 Ariz. 590, 599, 680 P.2d 121, 130 (1983), and may testify they administer FSTs in "an attempt to determine whether [a defendant] is, in fact, intoxicated and was intoxicated while he was driving the car," *State v. Askren*, 147 Ariz. 436, 437, 710 P.2d 1091, 1092 (App. 1985) (emphasis deleted).

¶9　　　The primary restriction on FST evidence concerns the test results' use in establishing a defendant's blood alcohol concentration (BAC). Our supreme court has held FST results may not be used to quantify an accused's BAC. *See State v. Superior Court (Blake)*, 149 Ariz. 269, 280, 718 P.2d 171, 182 (1986). This restriction extends to HGN test results, which, although the test satisfies the *Frye*[2] standard of scientific reliability, cannot be used to quantify or estimate BAC in the absence of a chemical test. 149 Ariz. at 280, 718 P.2d at 182; *see also Hamilton*, 165 Ariz. at 517, 799 P.2d at 858 (HGN test results inadmissible to estimate BAC in absence of chemical test of blood, breath, or urine). The proper use of HGN test results is as evidence "relevant to show[ing] whether a person [was]

---

[2]*Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) (standard for admissibility is whether technique is generally accepted by relevant scientific community).

under the influence of alcohol . . . in the same manner as . . . other field sobriety tests." *Hamilton*, 165 Ariz. at 518, 799 P.2d at 859.

¶10        Within this framework of admissibility, we find no support for the restrictions the respondent judge imposed. Rather, it is clear Arizona law permits testimony about a defendant's performance on FSTs as long as no correlation is made between performance and BAC and no scientific validity is assigned to the tests themselves as accurate measures of BAC. FST performance has repeatedly been found to be relevant evidence of a defendant's impairment; thus, we disagree with the respondent's implicit conclusion to the contrary. *See Blake*, 149 Ariz. at 280, 718 P.2d at 182 (FST performance admissible "as evidence that the driver is 'under the influence'"); *Hamilton*, 165 Ariz. at 518 n.3, 799 P.2d at 859 n.3 ("Field sobriety tests . . . show[] clues or symptoms that correlate to impairment."); *Fuenning*, 139 Ariz. at 599, 680 P.2d at 130 (performance on FSTs not conclusive, but relevant to question of intoxication); *Askren*, 147 Ariz. at 437, 710 P.2d at 1092 (purpose of FSTs is to determine alcohol intoxication).

¶11        Moreover, the words the respondent precluded are pervasive throughout the case law concerning FSTs and have not been found, or even suggested to be, inadmissible. The danger our courts have attempted to guard against is using FST performance to estimate or quantify a specific BAC or level of impairment for prosecutions under § 28-1381(A)(2), in which the state must prove the defendant had a specific BAC. That danger is much attenuated in prosecutions under § 28-1381(A)(1), as is the case here, where the state need

6

only prove impairment to the slightest degree—though we realize BAC is relevant to such prosecutions and reiterate FST performance is inadmissible to quantify BAC in all prosecutions under § 28-1381.

¶12 The respondent judge ordered the restrictions based on his finding there is no scientific correlation between impairment and performance on FSTs, a finding in turn based on expert testimony that several factors other than alcohol impairment can lead to a cue of impairment on an FST. Our supreme court has indicated, however, that expert testimony goes to the weight to be given to FST evidence, not its admissibility or relevance at trial. *See State v. Velasco*, 165 Ariz. 480, 486, 799 P.2d 821, 827 (1990) ("Any lack of perfection [in tests used to measure BAC] affects the weight the jury may wish to accord the evidence obtained by [those] test[s], not its admissibility."). Furthermore, although we generally defer to a respondent judge's factual findings, the respondent's conclusion here is not supported by the evidence. *See Motel 6 Operating Ltd. P'ship v. City of Flagstaff*, 195 Ariz. 569, ¶ 7, 991 P.2d 272, 274 (App. 1999). The mere self-evident fact that circumstances other than alcohol impairment can be responsible for cues of impairment on FSTs does not establish that such tests are necessarily uncorrelated with impairment. Indeed, our courts have repeatedly found FSTs are tests of impairment, albeit not definitive indicators of such, and police officers should be permitted to testify accordingly. *See Hamilton*, 165 Ariz. at 518, 799 P.2d at 859 (field sobriety test performance relevant to showing whether defendant was under influence of alcohol); *see generally Blake*, 149 Ariz. at 279, 718 P.2d at 181 (supreme

7

court acknowledged "[n]ystagmus may be caused by conditions other than alcohol intoxication"). And the words at issue in this case do not in themselves suggest a scientific basis for the tests or lend the tests unwarranted scientific credibility. Rather, they make plain the tests' purpose as indicators of impairment and enable the state to demonstrate their probative value. Testimony that a defendant exhibited "four cues of impairment" on a "field sobriety test" does not improperly assert or imply the defendant has been scientifically *proven* to have been impaired. Rather, such testimony constitutes relevant evidence of a defendant's impairment, which jurors may consider and balance against evidence of the tests' limitations.

¶13 Thus, the proper method for challenging FST deficiencies is testimony, such as that of Cordova's expert at the pretrial hearing, calling these deficiencies to the attention of the jury and presenting evidence that cues of impairment were caused by something other than alcohol impairment. If, during trial, Cordova believes the state has attempted to assign unwarranted scientific credibility to the tests, e.g., the state has used their results to establish a specific BAC or as a definitive indicator of impairment, Cordova can object at that time. The respondent judge would then have the appropriate context in which to determine whether the state had improperly used the FST performance evidence.

¶14 Additionally, permitting restrictions on vocabulary in DUI cases such as the respondent imposed here would open the door to creative wordsmithing and invite perpetual and unnecessary litigation. A considerable amount of time could be spent determining which

8

words accurately describe FSTs and portray FST performance. Would a law enforcement officer be permitted to testify he or she had administered a "field incapacitation examination"? And that the officer had detected two cues of "deficient performance"? Without use of certain words, testimony could take an unnatural tone as witnesses attempt to sidestep prohibited terms. Such restrictions would place an unnecessary burden on both parties and would be transparent to the jury. *See Askren*, 147 Ariz. at 437, 710 P.2d at 1092 ("Any juror would know that the purpose of giving the field tests was to try to determine if appellant was under the influence of alcohol.").

## Conclusion

¶15        We acknowledge the challenge faced by trial courts when monitoring the appropriate presentation of evidence regarding a defendant's performance on FSTs. Cordova presented, and the trial court credited, expert testimony and studies indicating that the "reliability and predictive validity" of the FSTs conducted on Cordova "has not been scientifically established." On the other hand, those tests require suspects to perform tasks that can readily expose deficiencies in motor control and mental agility caused by the voluntary consumption of alcohol. Thus, our courts have repeatedly endorsed the relevance of a defendant's performance of such tests as evidence indicating unlawful impairment. In short, such test results are admissible in the same way any other observation about a defendant's behavior is admissible on the question of whether the defendant exhibited the signs and symptoms of unlawful impairment.

**¶16** We do not question the respondent's motivation in attempting to constrain the state from using terminology that could cause a jury to erroneously assume that the FSTs were scientifically designed to definitively determine alcohol impairment, but the respondent erred in prospectively prohibiting relevant terms. As our jurisprudence indicates, it is impractical to discuss FSTs without using some of the prohibited vocabulary. Instead, the presentation of FST testimony is more efficiently and fairly monitored within the context of the actual presentation of the evidence through opposing counsel's objections and cross-examination. We emphasize, however, that trial courts should not be deterred by our reasoning today from placing appropriate boundaries on such testimony at trial.

**¶17** Accordingly, having found that the respondent judge abused his discretion in granting Cordova's motion to preclude the use of certain words and terms, we accept jurisdiction, grant relief, vacate the order granting the motion, and direct the respondent judge to permit the state to present evidence of Cordova's FST performance as permitted by law and without the ordered restrictions on vocabulary.

_____
PHILIP G. ESPINOSA, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
GARYE L. VÁSQUEZ, Judge

10