DECISION
This matter is before the Court for decision after a jury waived trial on the charge of "driving under the influence of intoxicating liquor."
The allegation against the Defendant arises from a motor vehicle accident which occurred just after midnight on July 20, 2007 at the intersection of Green End Avenue and Valley Road in Middletown, Rhode Island. The Defendant was the driver and sole occupant of his vehicle and the other car involved contained two occupants. As soon as the cars came to a halt, post-collision, the Defendant exited his vehicle to approach the occupants of the other car to inquire about their well-being. No one had suffered any apparent injuries. One witness testified that the Defendant exhibited no unusual behavior or manner of speech. The other witness (and occupant of the vehicle) was too jarred by the incident to recall any specific observations.
Officer Timothy Beck of the Middletown Police Department arrived on the scene shortly after the accident, and saw the Defendant standing on the sidewalk — "not stumbling," "swaying," or "fidgeting." (Tr. 5.)
When Officer Beck approached the Defendant and was within 15 inches of his face, he detected an "aroma commonly associated with an alcoholic beverage." (Tr. 7.) The officer also testified that the Defendant's speech was "slurred" but that the officer had no trouble understanding "everything" the Defendant communicated to him. The officer candidly *Page 2 
acknowledged that this "slurred speech," which was not further explained or described did not provide sufficient probable cause to make an arrest. (Tr. 7.) The officer further testified that even in combination his observations of the Defendant, in this particular case, of slurred speech, alcoholic aroma and bloodshot eyes were an inadequate basis for an arrest.
In any event, the officer proceeded to administer, the Defendant contends improperly, three field sobriety tests (FST), including the horizontal gaze nystagmus test (HGN), the walk and turn test (WAT) and the one leg stand test (OLS). The National Highway Traffic and Safety Administration (NHTSA) recognizes these three tests as "highly accurate and reliable" for "distinguishing BACs (sic) above 0.10 . . . whenadministered in a standardized manner." (Ex. C, VIII-I, emphasis supplied). It is undisputed that these standardized tests must be administered and scored "exactly as the NHSTA prescribes" and without "room for improvisation" or "deviation." (Tr. 19.) Officer Beck, in fact, agreed that "any deviation from NHTSA's instructions compromise the validity of the results of the test." (Tr. 20.)
Before any officer utilizes the HGN test at roadside, he/she is required by the procedural rules to assess the individual for "possible medical impairment." (Ex. C VIII-5.) The officer must initially determine if the subject's eyes exhibit equal pupil size and equal tracking, i.e., following an object together. If the eyes fail to track together or the pupils are "noticeably unequal" in size, medical disorders or injuries could be the cause of the nystagmus. (Ex. C VIII-5-"Procedures.") The evidence introduced at trial indisputably establishes that the pre-requisite assessment of medical impairment for the HGN test was omitted. (Tr. 32.) Furthermore, the officer repeatedly testified that he tested both of the Defendant's eyes "simultaneously" for nystagmus which also constitutes a deviation from the required standard of independent assessment (Officer Beck frankly admits to this deviation). (Tr. 36, 38.) *Page 3 
Before Officer Beck commenced the WAT test, the Defendant had informed him that he suffered from a sciatic nerve condition. The officer agreed that medical conditions pertaining to the back and legs impair the predictive reliability of the test. (Tr. 40.) In pertinent part, the procedural standards recognize that individuals with back or leg problems have difficulty performing the WAT test. (Ex. C VIII-II, paragraph 4.) Again, the officer agreed that "there is no room . . . for not following NHTSA's mandates" which require the use of an "exact script" composed by the organization. (Tr. 46.) Failure to precisely follow the standardized protocol, the officer acknowledged, deprives the test of its predictive reliability. (Tr. 47.)
Finally, with regard to the OLS test, a third deviation from the mandated protocol of administration occurred. The officer readily conceded his non-conformance with the requisite instructions to be given to the test subject. (Tr. 51.)
The State bears the burden of establishing that the three above-described tests were administered properly in order for them to be cloaked in reliability. State v. Witte, 836 P.2d 1110 (Kan. 1990) (citing State ex rel. Hamilton v. City Court of City of Mesa,799 P.2d 855 (Ariz. 1990) (discussing the admissibility of the HGN test results).
The credible and unequivocal testimony at trial reveals a trio of deviations from the standardized test protocol which yielded unreliable results. The infirmities in the administration of the tests to the Defendant and the conclusions of the officer based upon the unsound results can not constitute any just or lawful evidentiary basis for a finding of guilt. As proof beyond a reasonable doubt is lacking, the Court enters a verdict of not guilty. *Page 1