NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSE MANUEL GONZALES-SANDOVAL, *Appellant.*

No. 1 CA-CR 23-0128
FILED 4-30-2024

Appeal from the Superior Court in Mohave County
No. S8015CR202200136
The Honorable Billy K. Sipe Jr., Commissioner Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza C. Ybarra
*Counsel for Appellee*

Jill L. Evans Attorney at Law, Flagstaff
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Anni Hill Foster and Judge Brian Y. Furuya joined.

---

**H O W E**, Judge:

¶1            Jose Manuel Gonzales-Sandoval appeals his convictions and sentences for sale of dangerous drugs and misconduct involving weapons. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2            In December 2021, investigators with a drug enforcement task force suspected Gonzales-Sandoval of drug trafficking. A federal undercover agent assisted the task force in their investigation, using recording devices to capture all of his interactions with Gonzales-Sandoval. On January 13, 2022, an informant helped the agent set up an initial transaction, or "drug buy," with Gonzales-Sandoval. After this meeting, the informant had no further involvement.

¶3            A few days later, Gonzales-Sandoval spoke to the agent over the phone, negotiating a new transaction involving methamphetamine. On January 19, 2022, Gonzales-Sandoval met with the agent in Kingman, Arizona, and sold him approximately 24 ounces of methamphetamine. Gonzales-Sandoval offered to sell the agent other types and amounts of drugs and discussed a potential trade for firearms. Gonzales-Sandoval pulled from his leg a handgun fitted with a laser sight, showing the agent his preferred type of firearm.

¶4            Gonzales-Sandoval continued to negotiate for additional business with the agent during subsequent phone conversations, claiming that "he wanted to go into bigger business" with him and could get a "better price" from a different supplier. On January 26, 2022, Gonzales-Sandoval again sold the agent approximately 20 ounces of methamphetamine. Again, they discussed future transactions involving methamphetamine and firearms, with Gonzales-Sandoval referring to himself as a "big dealer."

¶5            In the final transaction, Gonzales-Sandoval offered to sell the agent a larger quantity of methamphetamine and fentanyl pills, along with a purchase or trade of firearms. On February 5, 2022, Gonzales-Sandoval

met with the agent in Flagstaff and sold him approximately 15 ounces of methamphetamine, 3,000 fentanyl pills, and four ounces of cocaine. Before the exchange of firearms, additional agents arrived and took Gonzales-Sandoval into custody.

¶6            The State charged Gonzales-Sandoval with three counts of sale or transportation of dangerous drugs, class 2 felonies; three counts of sale or transportation of narcotic drugs, class 2 felonies; one count of misconduct involving weapons for possessing a firearm while being a prohibited possessor, a class 4 felony; and one count of misconduct involving weapons for possessing a firearm during the commission of a felony offense, a class 4 felony. These offenses arose solely out of the January 19, January 26, and February 5 transactions.

¶7            Throughout pretrial proceedings, Gonzales-Sandoval was represented by counsel. Nonetheless, he filed a number of motions in propria persona, several of which demanded an immediate trial and alleged his right to a speedy trial had been violated. The trial court repeatedly took no action on the motions, explaining to Gonzales-Sandoval that he was not entitled to hybrid representation and all pleadings must be filed by counsel.

¶8            As trial approached, defense counsel moved to dismiss the charges, arguing trial continuances violated Gonzales-Sandoval's right to a speedy trial and affected his ability to locate material witnesses. Gonzales-Sandoval then filed a series of pleadings in propria persona, including a request to represent himself, his own motion to dismiss based on a speedy trial rights violation, and a motion to continue trial. He also filed a notice of witnesses listing the informant's name, along with what he claimed to be her address, driver's license number, and vehicle information.

¶9            At a pretrial motions hearing, Gonzales-Sandoval moved for a ninety-day continuance and requested to represent himself. He asserted that he needed the extra time to search for a woman whom he believed to be the informant. By this time, Gonzales-Sandoval had gone through five different defense counsels and the court had continued multiple hearings and the trial. The court declined to continue trial, and Gonzales-Sandoval withdrew his request to represent himself.

¶10           Four days before trial, Gonzales-Sandoval moved to compel the disclosure of "the identity and location of any undisclosed police witnesses, namely the confidential informant who was present at the [first] drug purchase." He claimed that the woman who introduced him to the

3

special agent was the "mastermind" behind the drug transactions. Because she had both provided the drugs for and received the proceeds from the transactions, she was materially necessary to Gonzales-Sandoval's entrapment defense. The State objected, arguing Gonzales-Sandoval presented no evidence to prove the informant's alleged involvement in the charged offenses, she would not be testifying in the State's case-in-chief, and her role had been minimal in the investigation. Gonzales-Sandoval countered that he would likely testify about the informant's involvement in all the transactions, and her name had been referenced in his conversations with the agent. He did not submit these conversations for the trial court's review and did not provide evidence directly linking the informant to the charged offenses. Rule 15.4(b) of the Arizona Rules of Criminal Procedure presumes that the State is not required to disclose information regarding confidential informants unless failure to do so would infringe on Gonzales-Sandoval's constitutional rights. Noting this, the court denied the motion, citing the lack of evidence that a confidential informant was involved in any of the charged transactions.

¶11        At trial, the State presented audio and video recordings, forensic testing, and witness testimony showing that Gonzales-Sandoval sold drugs to the agent and possessed a firearm at one of the transactions. To prove his prohibited possessor status, the State admitted certified records showing Gonzales-Sandoval had two prior felony convictions. *See* A.R.S § 13-3101(A)(7)(b). Although the records listed some sentencing and immigration information, the State redacted any reference to the nature of the felony convictions. Gonzales-Sandoval did not request additional redactions or object to admission of the records based on their prejudicial impact. The State did not present testimony on Gonzales-Sandoval's prior felony convictions, referring to them only in closing remarks as proof of his prohibited possessor status.

¶12        Gonzales-Sandoval's defense relied heavily on the role of the informant, portraying her as a "powerful" figure who threatened and coerced him into committing the offenses. Gonzales-Sandoval admitted recordings of his conversations with the agent, intending to demonstrate that the informant played a supervisory role in the transactions. Gonzales-Sandoval did not challenge the evidence associated with his prohibited possessor status, instead focusing on the operability of the firearm. He did not testify on his own behalf.

¶13        The trial court instructed the jury to consider each offense separately on the evidence, uninfluenced by their decision on any other offense. The court dismissed one count associated with the January 19

transaction based on forensic testing and entered a judgment of acquittal on three counts associated with the February 5 transaction based on a lack of evidence. *See* Ariz. R. Crim. P. 20(a)(1). The jury convicted Gonzales-Sandoval of all remaining counts. As an aggravating factor, the jury found that he committed the drug sales offenses for pecuniary gain. *See* A.R.S. § 13-701(D)(6).

¶14        Before sentencing, the court found that the State had proved Gonzales-Sandoval's two prior felony convictions, one a class 3 and the other a class 5 felony, entered on May 15, 2012. These convictions constituted both an aggravating circumstance and sentencing enhancement as a category three repetitive offender. A.R.S. § 13-701(D)(11); A.R.S. § 13-703(C). He was sentenced to aggravated terms of 35 years for the two sale of dangerous drug offenses, and to maximum terms of 12 years for the weapons misconduct charges. The court directed that the sentences for the weapons misconduct charges run concurrently, and all other sentences consecutively. This resulted in a cumulative 82-year period of incarceration. Gonzales-Sandoval now appeals his convictions and sentences, and this court has jurisdiction under Ariz. Const. art. II, § 24 and A.R.S. § 13-4033(A).

## DISCUSSION

### I.    Denial of Motion to Compel Disclosure

¶15        Gonzales-Sandoval argues that the trial court abused its discretion in denying his motion to compel disclosure of the informant's identity and location. He contends that the court's ruling deprived him of his constitutional right to a fair trial. We review the court's denial of a motion to compel disclosure for an abuse of discretion, but we review an alleged constitutional violation de novo. *State v. Conner*, 215 Ariz. 553, 557 ¶ 6 (App. 2007).

¶16        The State may withhold the location or identity of an informant who will not be called to testify if "disclosure would result in substantial risk to the informant or to the informant's operational effectiveness" and "a failure to disclose will not infringe on the defendant's constitutional rights." Ariz. R. Crim. P. 15.4(b)(2). To overcome the public policy interest in protecting an informant's identity, the defendant bears the burden of establishing that the informant could testify on the merits of the case and non-disclosure would deprive him of the right to a fair trial. *State v. Grounds*, 128 Ariz. 14, 15 (1981). The defendant must support his allegation with evidence, including "sworn affidavits, stipulated facts, depositions, [or] oral testimony," and cannot rely solely on counsel's

statements. *Id.* The defendant's mere speculation that the informant would provide exculpatory or impeaching testimony does not impose a disclosure duty on the State, *State v. Acinelli*, 191 Ariz. 66, 71 (App. 1997), particularly when the record shows the defendant knew the identity of the informant, *State v. Robles*, 182 Ariz. 268, 271 (App. 1995).

**¶17**        Gonzales-Sandoval failed to establish that the informant could testify on the merits of the case, and the trial court acted within its discretion in denying the motion to compel disclosure. The informant had no direct involvement in any of the charged offenses and played a minimal role in the investigation. The record shows that the informant introduced Gonzales-Sandoval to the agent and helped arrange the initial meeting. From that point, the agent worked solely with Gonzales-Sandoval in negotiating and handling the transactions. The State did not call the informant in its case-in-chief or admit evidence specifically related to the uncharged January 13 transaction.

**¶18**        Although Gonzales-Sandoval argued before the trial court, as he does on appeal, that the informant played a larger role in the offenses, he did not present competent evidence to support this allegation. Gonzales-Sandoval claimed that the informant had been the "mastermind" behind the transactions, supplied the drugs, and took money from the agent. He did not, however, substantiate this assertion with his sworn affidavit or oral testimony, referring only to brief mentions of her name in recorded conversations. *See Grounds,* 128 Ariz. at 15 ("Argument of counsel is not evidence."). At trial, the evidence contradicted Gonzales-Sandoval's argument, showing that he willingly sold drugs to the agent on multiple occasions, portrayed himself as a "big dealer," and aggressively negotiated prices. Although Gonzales-Sandoval referred to the informant in his recorded conversations with the agent, these brief statements did not paint her as the ringleader or "mastermind" but merely as an associate. Without more, Gonzales-Sandoval's claim that the informant would provide material testimony at trial was based on mere speculation. *See Acinelli*, 191 Ariz. at 71.

**¶19**        Moreover, Gonzales-Sandoval acknowledged that he knew the identity of the informant and location of her family members. In the notice of witnesses filed in propria persona, Gonzales-Sandoval listed the informant's name, address, and vehicle information. The fact that he could not locate the informant, even with intimate knowledge of her contact information, did not impose an automatic disclosure duty on the State. *See* Ariz. R. Crim. P. 15.4(b)(2); *Robles*, 182 Ariz. at 271. Gonzales-Sandoval did not meet his burden, failing to establish either materiality or a deprivation

of constitutional rights. We find no abuse of discretion in the trial court's refusal to compel disclosure.

## II.    Denial of Motion to Continue Trial

¶20        Gonzales-Sandoval argues that the trial court abused its discretion in denying his motion to continue trial to locate the informant. We review the denial of a continuance for an abuse of discretion and resulting prejudice. *State v. Forde*, 233 Ariz. 543, 555 ¶ 18 (2014).

¶21        The trial court may grant a trial continuance "only on a showing that extraordinary circumstances exist, and that delay is indispensable to the interests of justice, and only for so long as is necessary to serve the interests of justice." Ariz. R. Crim. P. 8.5(b). "When a defendant concurrently has self-representation and representation by counsel, hybrid representation results." *State v. Roscoe*, 184 Ariz. 484, 498 (1996). "Arizona does not recognize a constitutional right to hybrid representation." *State v. Cornell*, 179 Ariz. 314, 325 (1994). Because represented defendants are not entitled to hybrid representation, they "may not file motions in addition to those the attorney files." *State v. Carlson*, 237 Ariz. 381, 398 ¶ 63 (2015).

¶22        While still represented by defense counsel, Gonzales-Sandoval filed several pleadings in propria persona, including requests to continue trial and represent himself. During the same period, counsel moved to dismiss based on an alleged speedy trial rights violation, a motion that Gonzales-Sandoval would later join. This motion argued that trial continuances had adversely impacted Gonzales-Sandoval's defense. With these contradictory motions pending, the trial court was not required to address Gonzales-Sandoval's motion to continue on the merits. *See id.* Gonzales-Sandoval did not have a right to hybrid representation, and he could not file a motion on his own behalf, particularly when that motion directly conflicted with a pending motion counsel had filed. *Id.* Notably, counsel did not request a continuance, even after the court denied the motion to dismiss, and confirmed that they were ready to proceed to trial. This record does not support Gonzales-Sandoval's contention that "extraordinary circumstances" justified a continuance, Ariz. R. Crim. P. 8.5(b), and the court's ruling prejudiced the defense, *Forde*, 233 Ariz. at 555 ¶ 18.

¶23        Insofar as Gonzales-Sandoval argues that the motion to continue should have been granted based on the State's failure to disclose the location of the informant, this claim similarly fails. As stated above, the State was not required to disclose an informant's location.

Gonzales-Sandoval claimed he knew the informant's identity, had ample time to locate her, and has not shown that she "could have been located and produced within a reasonable time had a continuance been granted." *See State v. Cook*, 172 Ariz. 122, 125 (App. 1992). The trial court acted within its discretion in denying the motion to continue trial.

### III. Admission of Evidence to Prove Prohibited Possessor Status

¶24 Gonzales-Sandoval argues that the trial court erred in failing to sua sponte order a bifurcated trial for the misconduct involving weapons offense associated with his prohibited possessor status. He claims that the court's error prevented him from receiving a fair trial because it resulted in the admission of otherwise inadmissible evidence of prior felony convictions. Because Gonzales-Sandoval raises this issue for the first time on appeal, we review only for fundamental error. *See State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018). To establish fundamental error, a defendant must show "(1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *Id.* at 142 ¶ 21. If the defendant establishes prong one or two, he must show the error resulted in prejudice. *Id.* If he establishes prong three, prejudice is presumed. *Id.*

¶25 Joinder of separate offenses is permitted if they are "based on the same conduct or are otherwise connected together in their commission" or the offenses are "part of a common scheme or plan." Ariz. R. Crim. P. 13.3(a)(2)–(3). In the interest of judicial economy, joinder is viewed as the rule not the exception. *State v. Murray*, 184 Ariz. 9, 25 (1995). Our supreme court recognized an exception to this rule in *State v. Burns*, holding that the trial court should avoid joining a misconduct involving weapons offense that requires evidence of a prior felony conviction, unless the parties have stipulated to the defendant's prohibited possessor status. 237 Ariz. 1, 15 ¶ 39 (2015). Based on the potential risk of prejudice, the court should sever the offense or "conduct a bifurcated trial to adjudicate any charge that requires evidence of a prior felony conviction." *Id.* In *Burns,* the supreme court concluded, however, that the court's error in joining the offenses was harmless because the State presented overwhelming evidence of guilt, the State did not place an emphasis on the defendant's prior felony convictions, and the jury was instructed to consider each offense separately. *Id.* at 15 ¶ 38.

¶26 In this case, the State charged Gonzales-Sandoval with a number of drug sales and misconduct involving weapons offenses, with

only one offense requiring proof of his prohibited possessor status. *See* A.R.S. §§ 13-3101(A)(7)(b) (defining a prohibited possessor as a convicted felon whose right to possess a firearm has not been restored), -3102(A)(4) (possession of a firearm while being a prohibited possessor), -3102(A)(8) (possession of a firearm in the commission of a felony offense), -3407(A)(7) (sale or transportation of dangerous drugs), -3408(A)(7) (sale or transportation of narcotic drugs). Gonzales-Sandoval did not stipulate to his status as a convicted felon, and his criminal history was not admitted for another evidentiary purpose. *See* Ariz. R. Evid. 404(b) (admissibility of "other crimes" as other-act evidence), 609(a)–(b) (admissibility of criminal convictions as impeachment evidence). Gonzales-Sandoval's prior felony convictions were therefore irrelevant to all but one offense, and joinder constituted error.

**¶27**　　　　Though establishing error, Gonzales-Sandoval must also demonstrate that the error went to the foundation of his case, deprived him of a right essential to his defense, or prevented him from receiving a fair trial. *See Escalante*, 245 Ariz. at 142 ¶ 21. Under prong three, Gonzales-Sandoval argues that the trial court's error in admitting evidence of his prior felony convictions tainted the jury's ability to render an impartial verdict and therefore resulted in prejudice. We disagree. As in *Burns*, the State presented overwhelming evidence of Gonzales-Sandoval's guilt. The State admitted audio and video recordings that captured Gonzales-Sandoval committing all the offenses, as well as forensic testing to confirm the type of drug involved in each transaction. The State did not emphasize Gonzales-Sandoval's criminal history, referring to his prior felony convictions only as proof of his prohibited possessor status. Gonzales-Sandoval has not articulated how joinder affected his decision not to testify, or his choice of defenses, and speculation cannot sustain a finding of fundamental error. Finally, the court instructed the jury to consider each offense separately. *See State v. Newell*, 212 Ariz. 389, 403 ¶ 68 (2006) (recognizing that we presume jurors follow the court's instructions). On this record, Gonzales-Sandoval has not shown that the court's error prevented him from receiving an impartial verdict and a fair trial. *See Escalante*, 245 Ariz. at 142 ¶ 21. Any error in allowing joinder of the offenses did not amount to fundamental, prejudicial error.

## IV.　　Use of Prior Felony Convictions as an Aggravating Factor

**¶28**　　　　Gonzales-Sandoval argues the trial court erred in finding his prior felony convictions constituted an aggravating factor under A.R.S. § 13-701(D)(11). Because he did not object to this issue at trial, he bears the burden of establishing fundamental, prejudicial error. *Id.* at 140 ¶ 12, 142

¶ 21. The imposition of an illegal sentence is fundamental error. *State v. Cox*, 201 Ariz. 464, 468 ¶ 13 (App. 2002). We review sentencing issues that involve statutory interpretation de novo. *State v. Urquidez*, 213 Ariz. 50, 53 ¶ 11 (App. 2006).

**¶29** The trial court may impose a maximum sentence if the State proves at least one aggravating factor applies, and an aggravated sentence if the State proves at least two aggravating factors apply. *See* A.R.S. §§ 13-701(C)–(D), -703(K); *Blakely v. Washington*, 542 U.S. 296, 301 (2004). A prior felony conviction may be used to aggravate a defendant's sentence if "[t]he defendant was previously convicted of a felony within the ten years immediately preceding the date of the offense." A.R.S. § 13-701(C), (D)(11); *see also State v. Ritacca*, 169 Ariz. 401, 403 (App. 1991) (concluding that a prior felony conviction may be used to both aggravate and enhance a defendant's sentence). To determine whether the prior felony conviction falls within the statutory limit, the court must look to the date of the conviction and the date of the current offense. A.R.S. § 13-701(D)(11). The statute does not allow the court to exclude time the defendant spent incarcerated, as permitted within the context of sentencing enhancement. *Id.*; *see also* A.R.S. §§ 13-105(22)(b)–(c), -703(C).

**¶30** Here, the trial court found that Gonzales-Sandoval had two prior felony convictions, both with the same date of conviction in May 2012. The record shows that Gonzales-Sandoval committed the current offenses in January 2022. Based on these dates, his prior felony convictions fell within the ten-year statutory time limit. *See* A.R.S. § 13-701(D)(11). The court could consider Gonzales-Sandoval's prior felony convictions as an aggravating factor and, when taken together with the aggravating factor found by the jury, could lawfully impose aggravated sentences for the drug sales offenses and maximum sentences for the misconduct involving weapons offenses. *See* A.R.S. §§ 13-701(C)–(D), -703(K). We find no error in the court's imposition of sentence, fundamental or otherwise.

**¶31** To the extent Gonzales-Sandoval asks that we conflate the requirements of A.R.S. § 13-701(D)(11) with those of the sentencing enhancement statutes, we see no basis to do so. To determine whether a prior felony conviction is historical for enhancement purposes, the trial court must determine whether it was "*committed within*" the five or ten years "immediately preceding the date of the present offense." A.R.S. § 13-105(22)(b)–(c) (emphasis added). The court looks to when the defendant committed the offense, excluding time spent incarcerated. *Id.* This language differs from A.R.S. § 13-701(D)(11), which requires proof "[t]he defendant was *previously convicted* of a felony within the ten years

immediately preceding the date of the offense." A.R.S. § 13-701(D)(11) (emphasis added). The two statutes use distinct language for the statutory time limit governing their respective application, with A.R.S. § 13-701(D)(11) placing the starting line at the date of conviction. A plain reading of the statute supports the court's sentencing decision in this case. *See State v. Wagstaff*, 164 Ariz. 485, 490 (1990) ("Clear and unambiguous statutory language is given its plain meaning unless impossible or absurd consequences would result.").

## CONCLUSION

¶32        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA