IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

_____

THE STATE OF ARIZONA,
*Appellee,*

*v.*

ANTHONY EUGENE SEARIGHT,
*Appellant.*

No. 2 CA-CR 2024-0230
Filed February 2, 2026

_____

Appeal from the Superior Court in Pima County
No. CR20212322001
The Honorable J. Alan Goodwin, Judge

**AFFIRMED**

_____

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Joshua C. Smith, Assistant Attorney General, Phoenix
*Counsel for Appellee*

Law Offices of Christopher L. Scileppi PLLC, Tucson
By Christopher L. Scileppi and Andrew J. Ross
*Counsel for Appellant*

**OPINION**

Judge Eckerstrom authored the opinion of the Court, in which Presiding Judge Brearcliffe concurred and Chief Judge Staring specially concurred.

E C K E R S T R O M, Judge:

¶1        Anthony Searight appeals his convictions and sentences for negligent homicide, endangerment, and criminal damage stemming from a vehicle collision.  He contends that the trial court erred in precluding evidence regarding the deceased victim's seat belt use at the time of the accident and in finding sufficient evidence that the collision was the ultimate cause of J.B.'s death.  He also argues the jury's verdicts were "logically impossible."  For the reasons that follow, we affirm.

**Factual and Procedural Background**

¶2        One afternoon in March 2021, Searight drove north on Camino Seco toward the intersection with Old Spanish Trail with A.H. in the front passenger seat and J.B. in the rear passenger seat.  Searight was speeding while racing another car.  After Searight entered the intersection, his car clipped another vehicle proceeding west on Old Spanish Trail. Searight lost control, eventually hitting a curb, a sign, and landscaping at an apartment complex before coming to a halt.  J.B. was ejected from the car during the crash.  He suffered severe injuries to his head and neck that would prove fatal.  Searight and A.H. were not ejected from the car and suffered less severe injuries.

¶3        Northbound Camino Seco has a posted speed limit of forty miles per hour.  Searight would later estimate his speed before the collision at approximately sixty to seventy miles per hour.  His foster brother, driving the other car involved in the race, estimated Searight's speed at fifty or fifty-five miles per hour.  Other lay witnesses and reconstruction experts provided various estimates of his speed, ranging between fifty-nine miles per hour and one hundred miles per hour.

¶4        Searight told an officer he had been unable to "stop for the red light" because he was driving "too fast."  A.H., Searight's front seat passenger, testified that the light was yellow and then turned red as they entered the intersection.  Other witnesses testified the traffic light was red.

¶5        J.B. suffered severe spinal and brain injuries.  Due to those injuries, J.B. was comatose and became dependent on a ventilator to breathe.  J.B.'s physicians advised his parents that J.B. could recover enough to be relieved of the ventilator and might recover some neurological function.  However, the possibility that J.B. would fully recover was "very remote" and the "extreme likelihood" was that J.B. would have "a life that didn't even compare or come close to what his previous[] life was."  Indeed, it was "likely" that J.B. would recover to "a largely vegetative state."  Based on this advice, J.B.'s mother determined that extraordinary measures should not be taken to keep J.B. alive.  He died when removed from life support.

¶6        The state charged Searight with manslaughter, two counts of endangerment, and one count of criminal damage.  Before trial, the state moved to preclude testimony regarding seat belts.  The state argued J.B.'s apparent failure to wear a seat belt was not an intervening proximate cause.  *See State v. Aragón*, 252 Ariz. 525, ¶¶ 15-16 (2022) (concluding lack of restraints, among other acts or omissions occurring simultaneously with charged act, cannot be intervening causes).  Searight acknowledged that "a superseding cause instruction and the argument" that accompanies it "do not appear on the facts in this case" and he had "no intention to raise such a defense or request such an instruction."  Instead, Searight argued that testimony about whether J.B. had been wearing his seat belt was relevant to whether Searight had a reckless state of mind in causing his friend's death.  The trial court granted the state's motion and precluded testimony regarding seat belts.  During trial, a juror submitted a question asking whether the victim had been wearing a seat belt.  The court did not direct that inquiry to the witness given its previous evidentiary ruling.

¶7        After a six-day trial, the jury acquitted Searight of endangerment of J.B. and manslaughter but found him guilty of the lesser-included offense of negligent homicide of J.B., endangerment of A.H., and criminal damage.  The trial court sentenced him to concurrent terms of imprisonment for negligent homicide and endangerment, the longest of which is five years, and suspended the imposition of sentence as to the criminal damage conviction and placed him on a three-year term of probation to begin after his absolute discharge from prison.  This appeal followed.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**Discussion**

## I.   Exclusion of Seat Belt Evidence

¶8          Searight argues the trial court erred in excluding evidence that J.B. had not been wearing his seat belt during the collision. Specifically, he argues the jury should have been able to consider whether J.B.'s failure to wear a seat belt was foreseeable as the proximate cause of negligent homicide. The state argues Searight waived this claim because he did not argue it below and that we should therefore review it only for fundamental error. But, because our supreme court has rejected the theory of relevance Searight relies on, his claim fails under any standard of review.

¶9          To prevail on the element of causation, the state must prove the defendant's conduct was both the cause in fact and the "proximate cause" of the final result. *Aragón*, 252 Ariz. 525, ¶¶ 8-9. A defendant's conduct is a cause in fact if, "[b]ut for the [defendant's] conduct[,] the result in question would not have occurred." A.R.S. § 13-203(A)(1). "'Proximate cause' exists if the alleged criminal act produced an injury or death 'in a natural and continuous sequence, unbroken by any efficient intervening cause.'" *Aragón*, 252 Ariz. 525, ¶ 9 (quoting *Torres v. Jai Dining Servs. (Phx.) Inc.*, 252 Ariz. 28, ¶ 12 (2021)); *see also* § 13-203(C)(2) ("If recklessly or negligently causing a particular result is an element of an offense," that element is established if "[t]he actual result involves similar injury or harm as the probable result and occurs in a manner which the person knows or should know is rendered substantially more probable by" the defendant's conduct.).

¶10          Only an intervening and superseding cause can relieve the defendant of liability. *See Aragón*, 252 Ariz. 525, ¶¶ 19-20. An intervening cause is independent from the defendant's conduct and is necessary in bringing about the harm. *Id.* ¶ 9. An intervening cause becomes a superseding cause, relieving a defendant of criminal liability, only if it is unforeseeable and extraordinary. *See id.* ¶ 19.

¶11          In *Aragón*, our supreme court addressed the identical causation argument urged by Searight under remarkably similar circumstances. 252 Ariz. 525. There, the defendant drove his vehicle at an excessive speed and collided with another vehicle, resulting in the death of one of its occupants. *Id.* ¶ 2. As here, the injured occupants were unrestrained by seat belts and the defendant contended that this was both an intervening and unforeseeable cause of their injuries—and therefore a superseding cause relieving him of criminal liability. *See id.* ¶¶ 2-3.

**¶12** Our supreme court observed that, where the defendant's course of conduct causing injury continues "up to the time the injury is sustained," any other substantial causal factor in bringing about the injury necessarily becomes a concurrent cause of the injury—not an intervening one. *Id.* ¶ 11. It therefore held that the victims' failure to wear seat belts could not be intervening causes of their injuries—even if they were substantial ones—because that condition occurred simultaneously with the defendant's excessive speeding. *Id.* ¶ 16.

**¶13** In the instant case, the state presented substantial evidence that Searight's conduct—driving markedly over the posted speed limit and running a red light—was a cause in fact of J.B.'s injuries. That conduct actively continued until the moment it caused the crash, resulting in J.B.'s ejection from the car. Any facts demonstrating that J.B. was unrestrained during that time, and that such lack of restraint played a substantial role in the extent of his injuries, would therefore constitute a concurrent cause of his death, not an intervening one. As such, those facts would be irrelevant to Searight's criminal liability on the question of causation. The trial court did not err in so concluding.

**¶14** However, Searight has also asserted the seat belt evidence was relevant and admissible on the question of *mens rea*, an issue not addressed in *Aragón*. *See id.* ¶¶ 21-22 (emphasizing that its holding pertained exclusively to the admissibility of seat belt evidence on the question of causation). Specifically, Searight has argued that his knowledge of whether his passengers were wearing seat belts bore "directly" on his awareness of the level of risks involved in his conduct.

**¶15** Searight timely presented this argument both in written briefing and oral argument to the trial court. On appeal, as discussed above, Searight has persisted in claiming that the court erred in precluding the seat belt evidence, albeit on different grounds.

**¶16** We could construe Searight's failure to reassert this specific ground for relief as appellate waiver. *See* Ariz. R. Crim. P. 31.10(a)(7)(A) (opening brief must include argument containing "contentions with supporting reasons for each contention"); *State v. Bolton*, 182 Ariz. 290, 298 (1995) (failure to argue claim constitutes waiver). But, we are reluctant to overlook manifest trial error in precluding important evidence when that ruling was squarely challenged and comprehensively litigated before the trial court on correct legal grounds—and the ultimate ruling has again been

5

challenged on appeal.[1]  *See Stokes v. Stokes*, 143 Ariz. 590, 592 (App. 1984) (waiver rule "is intended to prevent surprise").  We are especially reluctant to affirm incorrect evidentiary rulings merely because an appellant has failed to comprehensively marshal the best arguments or legal support in his or her appellate briefing.  Further, to the extent we encounter fundamental evidentiary error in the appellate record not raised by a criminal defendant on appeal, we retain the authority to address that error.  *See* Ariz. R. Evid. 103(e) ("A court may take notice of an error affecting a fundamental right, even if the claim of error was not properly preserved.").  For those reasons, we invited supplemental briefing by the parties on this issue, and we exercise our discretion to address that argument on its merits as potential fundamental error.  *See State v. Clark*, 249 Ariz. 528, ¶ 17 (App. 2020) (courts have discretion to address waived arguments); *Liristis v. Am. Fam. Mut. Ins. Co.*, 204 Ariz. 140, ¶ 11 (App. 2002) ("[W]e may forego application of the [waiver] rule when justice requires.").

¶17        To convict a defendant of manslaughter, the state must prove the defendant was aware of, and consciously disregarded, a substantial and unjustifiable risk, resulting in another's death.  A.R.S. §§ 13-105(10)(c), 13-1103.  Negligent homicide requires the defendant fail to perceive a substantial and unjustifiable risk that a death will occur, and "[t]he risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."  A.R.S. §§ 13-105(10)(d), 13-1102.

¶18        So instructed, the jury was tasked with assessing both:  (1) the objective level of risk that Searight's driving posed to the lives of others under the specific circumstances of the case, and (2) whether Searight either consciously disregarded that risk or committed gross negligence by failing to perceive it.  Evidence regarding seat belt use by Searight's passengers at the time of the crash would have informed both inquiries.

¶19        As the facts of this case would appear to demonstrate, a jury might reasonably conclude that seat belt use would markedly reduce the risk of a passenger's death in a collision.  Any such conclusion would

---

[1]The concurring opinion maintains we should refrain from addressing the relevance of seat belt evidence to *mens rea* because the trial record does not conclusively demonstrate that the alleged victim was unsecured.  That reasoning overlooks that the trial court's ruling—which precluded the presentation of any seat belt evidence—itself prevented any comprehensive factual development on that question.

inform its assessment of the objective risk Searight's driving posed toward his passengers' lives. *See* § 13-105(10)(c) ("[r]ecklessly" requires showing of substantial risk), (d) ("[c]riminal negligence" requires showing of substantial risk).

**¶20** Further, Searight's awareness of his passengers' seat belt use—or any reasonable assumptions about such use—would also be highly relevant. It would provide the jury with an important context from which to infer the level of either recklessness or negligence Searight displayed when he drove toward an intersection at an excessive speed. A jury might conclude that driving at an excessive speed is a greater deviation from a reasonable standard of care when the driver knows his passengers are unbelted than if he believes they are properly restrained. Indeed, if Searight had no knowledge that the victim was in his vehicle, that fact would be plainly relevant. For the same reason, the driver's knowledge regarding a passenger's seat belt use must be relevant—it bears on his knowledge of the exposure of others to the consequences of his conduct. Similarly, if Searight knew or had reasonable basis to believe that his passenger was unbelted and particularly vulnerable to the consequences of reckless driving, we are hard pressed to believe that the state would not have sought to admit that evidence—and would have been entitled to do so.

**¶21** Our conclusion that any seat belt evidence was highly relevant is reinforced by the trial record. That evidence would have supported Searight's theory of the case that "not every accident is a crime." As part of that argument, his counsel emphasized that the risks created by Searight's driving were not so acute as to demonstrate a more culpable mental state than the non-criminal negligence of most other drivers who cause routine accidents. At least one member of the jury also appeared to believe seat belt use was relevant to deciding Searight's culpability. At the conclusion of the investigating officer's testimony, a juror submitted a question inquiring whether the victim was wearing a seat belt.

**¶22** Generally, a trial court's discretion to exclude relevant evidence is broad. *See* Ariz. R. Evid. 403; *see also State v. Campoy*, 214 Ariz. 132, ¶ 5 (App. 2006). "An error of law committed in reaching a discretionary conclusion may, however, constitute an abuse of discretion." *State v. Wall*, 212 Ariz. 1, ¶ 12 (2006). Here, the trial court provided erroneous grounds for its ruling.

**¶23** In precluding the evidence, the trial court observed that "all users of the public roadways know and foresee" that there are "other users of the roadway who may or may not be wearing seatbelts . . . ." But that

observation overlooked the elements of manslaughter and negligent homicide. As discussed, those elements required the jury to assess not only general foreseeable risks attendant to all driving but also the substance, degree, and nature of the risk to human life under the particular circumstances of the case. To the extent the court thus overlooked the full scope of the state's evidentiary burden, the court necessarily erred in evaluating and weighing the probative value of any seat belt evidence. *See Shotwell v. Donahoe*, 207 Ariz. 287, ¶ 34 (2004) (balancing of probative value and prejudicial effect "begins with a proper assessment of the 'probative value of the evidence on the issue for which it is offered'" (quoting *State v. Gibson*, 202 Ariz. 321, ¶ 17 (2002))). In context of the evidentiary issue before it, the court's reasoning also suggested that the general foreseeable risks posed by Searight's driving foreclosed any debate about whether the risk of death created thereby was substantial. But in so concluding, it made an assessment on an element of both homicide offenses that belonged exclusively to the jury. *See State v. Ring*, 204 Ariz. 534, ¶ 101 (2003) ("The Sixth Amendment assigns to the jury responsibility for determining whether all statutory criminal elements exist.").

**¶24** Second, the trial court misunderstood Searight's theory of relevance as a species of a causation argument, finding it to be "the functional equivalent" of arguing superseding cause. But, as discussed, Searight's theory of relevance concretely addressed two independent elements of the homicide charges: *mens rea* and the objective risk of death posed by Searight's conduct. Those statutory elements of both manslaughter and negligent homicide are analytically distinct from any question of causation. Because the court's reasoning in precluding the evidence did not address fully both the nature and scope of Searight's theory of relevance, we cannot defer to its conclusion that any relevance of the seat belt evidence would be outweighed by "a significant risk of confusing the jury."[2] *See State v. Harrison*, 195 Ariz. 28, ¶ 21 (App. 1998) (in weighing probative value against prejudicial impact, appellate court views evidence in the "light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect" (quoting *State v. Castro*, 163 Ariz. 465, 473 (App. 1989))). Accordingly, the trial court erred in precluding the seat belt evidence to the extent the parties sought to

---

[2]Here, where the seat belt evidence was relevant and probative on some elements of the offenses but not others, our rules authorize parties to request and judges to provide limiting instructions. *See* Ariz. R. Evid. 105.

present such evidence on the questions of *mens rea* and the risk of death posed by Searight's conduct.

¶25 To evaluate whether that error entitles Searight to a new trial, we must determine whether that error sufficiently prejudiced him to justify one. "Establishing prejudice from fundamental error varies depending on the nature of the error and the unique case facts." *State v. Escalante*, 245 Ariz. 135, ¶ 29 (2018). A defendant must show that, without the error, a reasonable jury "could have" plausibly and intelligently returned a different verdict. *Id.* ¶¶ 29, 31. The "could have" standard is an objective one, and in applying that standard, an appellate court should examine the entire record. *Id.* ¶ 31.

¶26 We render this assessment mindful that the jury acquitted Searight of manslaughter. Thus, we address only whether a reasonable jury could have plausibly acquitted Searight of negligent homicide if the seat belt evidence had been properly admitted on the questions of risk of harm and *mens rea* pertinent to that crime.

¶27 The collision occurred at approximately 1:30 p.m. at the intersection of a four-lane arterial and a winding, nonresidential roadway within Tucson. The posted speed limit was forty miles per hour. At the scene, Searight himself confessed that "I was going too fast, and I couldn't stop at the red light." He also told the officer that he was going "sixty, seventy" and that he was racing his brother.

¶28 Detective Munoz—the lead traffic detective who reconstructed the accident—testified that Searight's car was travelling 75.26 miles per hour when it started to skid after the accident. He observed that the car finally came to rest 523 feet away from the start of the skid, after destroying a sign on the apartment complex grounds. The driver of the car that clipped Searight's car in the intersection described Searight's car as "flying" through the intersection. He estimated Searight's speed to be eighty miles per hour.

¶29 Even Searight's own accident reconstruction expert, who reviewed the results of the police investigation, determined that his speed was 58.9 miles per hour when he started to skid. This is still almost twenty miles per hour above the posted speed limit—measured after Searight's car had already clipped another car, suggesting that it had been travelling at a yet higher speed before that collision. And, although it was never conclusively established whether the car rolled over during the accident, two of its wheels were sheared off, and one of them was launched into the

air with sufficient force to become embedded in the wall of a second story apartment.

¶30    In sum, Searight confessed he was not intending to drive cautiously but rather was racing.  He confessed to knowingly running a red light while doing so.  He did not modestly speed in a fashion that could plausibly be characterized as the product of mere inattentive neglect. Rather, in conformity with his intent to race, his speed was a gross deviation from the posted limit.   Given these undisputed facts, the record before us allows for only one reasonable conclusion:  that Searight grossly deviated from a reasonable standard of care when he proceeded through a red light at a speed far exceeding the posted limit.  §§ 13-105(10)(d), 13-1102 (person commits negligent homicide by causing the death of another by grossly deviating from reasonable standard of care).[3]

¶31    On these facts, no reasonable juror could have acquitted Searight of negligent homicide had he been allowed to present evidence regarding his passengers' seat belt use and his awareness and assumptions surrounding it.  *State v. Escalante*, 245 Ariz. 135, ¶¶ 29, 31 (2018).[4]

## II.  Sufficiency of the Evidence

¶32    Next, Searight argues the trial court erred in denying his motion for a judgment of acquittal under Rule 20, Ariz. R. Crim. P., on the

---

[3]As we have concluded above, any seatbelt evidence was irrelevant and inadmissible on the question of whether Searight's gross negligence caused J.B.'s fatal injuries.   The trial court's error in precluding such evidence had no effect on the jury's assessment of that element of the offense.

[4]For parallel reasons, the trial court's error in precluding the seat belt evidence does not require us to vacate the defendant's conviction for endangering his other passenger.  As to that count, the state was required to prove beyond a reasonable doubt that Searight's conduct posed a substantial risk of imminent death or physical injury specifically to those allegedly endangered.  *See* A.R.S. § 13-1201.  The above facts, coupled with the death of Searight's other passenger, overwhelmingly demonstrate that the risks to A.H. created by his conduct were not remote but substantial. *See State v. Ramos*, 235 Ariz. 230, ¶ 18 (App. 2014) ("If overwhelming evidence of guilt exists in the record, we may conclude that a defendant has failed to meet his burden of establishing prejudice.").

homicide count. Specifically, he argues J.B.'s family's decision to remove life support systems was the superseding cause of J.B.'s death in light of the testimony from Dr. Matthew Wilson regarding the possibility that J.B. could have recovered from his injuries. In reviewing the denial of a Rule 20 motion, we view the evidence in the light most favorable to sustaining the jury's verdict. *State v. Far W. Water & Sewer Inc.*, 224 Ariz. 173, ¶ 38 (App. 2010).

¶33          The "question of sufficiency of the evidence is one of law," which we review de novo. *State v. West*, 226 Ariz. 559, ¶ 15 (2011). We must decide whether the state presented evidence that "reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290 (1996). In so doing, we may not "reweigh evidence or reassess the witnesses' credibility." *State v. Buccheri-Bianca*, 233 Ariz. 324, ¶ 38 (App. 2013). If jurors could reasonably differ as to whether the evidence establishes the necessary facts, that evidence is sufficient as a matter of law. *State v. Davolt*, 207 Ariz. 191, ¶ 87 (2004).

¶34          To support Searight's conviction for negligent homicide, the state was required to prove that Searight, by criminally negligent conduct, caused J.B.'s death. *See* A.R.S. § 13-1102(A). This required the state to establish the element of causation, including proximate cause. *See* § 13-203(A).

¶35          As discussed above, a defendant's conduct is the proximate cause if the alleged criminal act produced injury or death "in a natural and continuous sequence, unbroken by any efficient intervening cause." *Aragón*, 252 Ariz. 525, ¶ 9 (quoting *Torres*, 252 Ariz. 28, ¶ 12). An intervening act only relieves the defendant of liability if it is the superseding cause of the injury. *Id.* A superseding cause is the intervening act of another that was unforeseeable by a reasonable person in the same situation as the defendant and, with the benefit of hindsight, appears abnormal or extraordinary. *Id.*; *State v. Pesqueira*, 235 Ariz. 470, ¶ 23 (App. 2014).

¶36          Here, the state presented sufficient evidence that Searight's conduct caused J.B.'s death, and that the decision to take J.B. off life support was not the superseding cause. As discussed above, the state presented ample evidence that Searight's driving at an excessive speed continued up until the moment of the collision that ultimately caused J.B.'s brain injury. Though J.B.'s death did not occur immediately after the accident, he lost consciousness at the scene which was likewise continuous until his death. But for Searight's conduct, J.B. would not have been dependent on a

ventilator and his family would not have had to decide whether to remove life support systems. And even assuming *arguendo* we could characterize the family's decision to remove life support as an intervening cause of death rather than a concurrent one, a jury could reasonably conclude that such a decision was a foreseeable consequence of the car accident. At minimum, a reasonable jury could conclude that the family's decision was not abnormal or extraordinary. *See State v. Fierro*, 124 Ariz. 182, 184-86 (1979) (removal of victim's life support systems not superseding cause of death when injuries resulting from defendant's conduct "cause death indirectly through a chain of natural effects and causes unchanged by human action" (quoting *Drury v. Burr*, 107 Ariz. 124, 126 (1971))).

## III. Inconsistent Verdicts

¶37　　　　Searight's final argument is that the jury's verdicts are "logically impossible" to reconcile. Specifically, he argues that the acquittal of manslaughter means the jury determined that Searight did not "consciously disregard" a substantial risk of J.B.'s death, which is inconsistent with the guilty verdict of endangerment as to A.H., which requires "disregard[ing] a substantial risk." *See* §§ 13-1103(A)(1) (manslaughter); 13-1201 (endangerment); *see also* A.R.S. § 13-105(10)(c) (recklessly means "person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur"). Because Searight did not raise this argument below, our review is for fundamental error. *See Escalante*, 245 Ariz. 135, ¶ 21.

¶38　　　　The state charged Searight with manslaughter and two counts of endangerment. As charged in this case, manslaughter requires the defendant to have been "aware of and [to have] show[n] a conscious disregard of a substantial and unjustifiable risk of death." Included in this charge was negligent homicide, which requires the defendant to have "failed to recognize a substantial and unjustifiable risk of causing death." The state's two charges of endangerment require the defendant to have "disregarded a substantial risk that his conduct would cause imminent death." Relevant here, the jury found Searight not guilty of manslaughter but found him guilty of negligent homicide of J.B. and endangering A.H. for the same conduct. Those verdicts suggest that the jury did not find that Searight exhibited the mental state of recklessness beyond a reasonable doubt. *Contrast* § 13-1103(A)(1) (requiring showing of recklessness as element of manslaughter), *with* § 13-1102(A) (requiring showing of criminal negligence as element of negligent homicide).

¶39     Arizona law generally permits inconsistent verdicts when those verdicts are submitted as to discrete offenses. *State v. Zakhar*, 105 Ariz. 31, 32-33 (1969) (Arizona law permits inconsistent verdicts); *Gusler v. Wilkinson*, 199 Ariz. 391, ¶ 25 (2001) (same). *But see State v. Hansen*, 237 Ariz. 61, ¶ 23 (App. 2015) (barring inconsistent verdicts that find guilt on both greater and lesser included offense or ambiguous verdicts that acquit on lesser-included offense but not greater offense or that involve guilty and not guilty verdicts on same offense). In *Gusler*, our supreme court applied this principle to the same charges we address here. 199 Ariz. 391, ¶¶ 3, 24. There, the defendant lost control of her vehicle and crossed the median; one oncoming car swerved to avoid the defendant, but then the defendant hit a second car, killing the driver. *Id.* ¶ 2. Tersely citing *Zaktar*, our supreme court determined on those facts that a jury could acquit the defendant of manslaughter but convict on the other endangerment counts. *Id.* ¶¶ 24-25. It so reasoned notwithstanding that both types of charges, as here, required the state to show the defendant's driving displayed a mental state of recklessness. *Id.* ¶ 25.

**Disposition**

¶40     For the foregoing reasons, we affirm Searight's convictions.

S T A R I N G, Chief Judge, specially concurring:

¶41     I concur with the disposition, but I do not join my colleagues' analysis of whether seat belt evidence was relevant to the question of Searight's *mens rea*. There is no reason to establish a significant evidentiary precedent arising from an issue Searight—who was represented by appellate counsel—apparently deemed unworthy of raising on appeal. The record before us includes *more* than overwhelming evidence of guilt, and no conclusive evidence establishing that J.B. was not wearing his seatbelt.[5] Even assuming I were to agree that the trial judge erred, and that we should not find waiver, we should refrain from establishing new precedent. As the majority correctly acknowledges, no reasonable juror could have acquitted Searight of negligent homicide had he been allowed to present evidence regarding his passengers' seat belt use. *Escalante*, 245 Ariz. 135, ¶¶ 29, 31; *see also State v. Ramos*, 235 Ariz. 230, ¶ 18 (App. 2014) ("If overwhelming

---

[5]A serious automobile accident is a complex event, as shown by the testimony of Detective Munoz and Searight's reconstruction expert. There was no expert testimony concerning the forces involved and whether J.B. could have been ejected if he were wearing a seatbelt.

evidence of guilt exists in the record, we may conclude that a defendant has failed to meet his burden of establishing prejudice.").